UNITED STATES, Appellee,

v.

**Airman First Class Daniel P. BANKER,
U.S. Air Force, Appellant.**

No. 41,712.
ACM 22990.

U.S. Court of Military Appeals.

March 28, 1983.

For Appellant: *Warren L. Collins, Jr., Esq.* (argued); *Colonel George R. Stevens, Captain Douglas H. Kohrt* (on brief); *Major Alexander S. Nicholas.*

For Appellee: *Captain Brenda J. Hollis* (argued); *Colonel James P. Porter, Major Michael J. Hoover* (on brief); *Colonel Kenneth R. Rengert.*

## Opinion of the Court

FLETCHER, Judge:

On September 10–12, 1980, appellant was tried by general court-martial at Bergstrom Air Force Base, Texas. Contrary to his pleas, he was found guilty of wrongful sale of methamphetamine on three separate occasions to Senior Airman Charles Simmons, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The members of his court-martial sentenced appellant to a dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved this sentence but for a short time deferred portions of it. The Court of Military Review affirmed.

This Court granted review on the following issue:

WHETHER THE COURT ERRED IN REFUSING TO ALLOW A DEFENSE WITNESS, ROGER C. SWINDERMAN, TO TESTIFY REGARDING PRIOR INCONSISTENT STATEMENTS BY AIRMAN SIMMONS.

The facts of this case are substantially agreed on by the parties to this appeal and are summarized below.

Appellant was charged with selling small amounts of methamphetamine to a fellow airman named Simmons on May 28, 1980, again on June 3, 1980, and finally on June 7, 1980. The critical government witness as to appellant's guilt of these charges was Airman Simmons. He was a government informant who took part in controlled drug operations directed against appellant under the supervision of the Air Force Office of Special Investigations (OSI) or local police. These police investigators did not directly observe the charged offenses.

Airman Simmons testified on direct examination that he voluntarily went to work for the OSI in March of 1980. He explained that "I was tired of drugs and tired of dealing. I wanted to see them out of here." He then testified in detail concerning his purchases of drugs from appellant.

On cross-examination, defense counsel explored Airman Simmons' cooperation with the OSI. He admitted that he told these agents that he owed appellant $390.00. Furthermore, he testified that these agents told him that they could not help him in that matter. Simmons also testified that he talked to the agents about making buys from people other than appellant but never got around to it. He also stated that he had no "vendetta against" appellant but concentrated his efforts against him because he was a "major supplier."

At this point in the cross-examination, the following was said:

Q  Have you used drugs since March when you went to the OSI?

A  No, I have not.

Q  Have you bought any?

A  Just from Daniel Banker.

Q  Have you bought any from anybody else?

A No.

Defense counsel then asked Simmons if he "score[d] any 'speed'" on the 5th day of June from Kevin Lee in the presence of Roger Swinderman. Simmons denied this. He also denied doing drugs with Terry Guidry since March 1980 and with David McGuffey in April 1980. Finally, this dialogue took place on cross-examination:

Q And you are denying any of these accusations that I am making against you, is that correct?

A That's true.

Q And are you saying that you never used any type of "speed", never tried to purchase any methamphetamine or never tried to use any methamphetamine after March? Is that what your testimony is?

A That is right.

In ending his testimony on cross-examination, Simmons admitted he was interested in seeing appellant convicted of the charged offenses.

Later in the trial defense counsel requested a subpoena for Roger Swinderman. The defense asserted that this prospective witness would testify that Airman Simmons purchased methamphetamine from Kevin Lee on June 5, 1980, in his presence. He argued that this testimony would establish that the witness Simmons lied on the stand and that he was biased and prejudiced in his testimony against appellant. The military judge opined, as argued by the Government, that under Mil.R.Evid. 608(b) (September 1, 1980), a witness could not be impeached by extrinsic evidence of acts of misconduct.

Still later in the trial, defense counsel called Roger Swinderman to the stand. He was asked to relate any statements made in his presence on June 5, 1980, by Simmons to Kevin Lee. Government counsel objected on the grounds that this question called for hearsay testimony from the witness and a proper foundation had not been laid under Mil.R.Evid. 613. At a session held outside the presence of the members,[1] defense counsel stated that Simmons had "denied" earlier in the trial "that he made any statement with regard to purchasing drugs" at that time. Swinderman then informed the judge that Simmons did make statements that he wanted to purchase drugs, in particular, "He asked if he could have a gram on the front."

Defense counsel then argued that this testimony would be admissible as a prior inconsistent statement. He further admitted that he intended to elicit this testimony concerning this drug transaction under Mil. R.Evid. 613. The military judge sustained the Government's objection to this testimony under Mil.R.Evid. 608(b).

_____

The initial question we must address in resolving this appeal is what rules of evidence were applicable at this court-martial. Article 36, UCMJ, 10 U.S.C. § 836. Appellant's court-martial took place from September 10 to September 12, 1980. Exec. Order No. 12198 (March 12, 1980) provides that the amendments to the Manual for Courts-Martial, United States, 1969 (Revised edition), which embrace the new Military Rules of Evidence, "shall take effect [at courts-martial] on [or after] September 1, 1980." (Change 3, Manual, *supra*.) Accordingly, this appeal must be decided in light of these rules of evidence.

A second preliminary question we must address concerns the scope of the granted issue. On appeal the defense challenges the propriety of the judge's ruling barring the testimony of the defense witness Swinderman as to certain statements made in his presence by the government witness Simmons. These statements were purportedly made to Kevin Lee at Swinderman's house on June 5, 1980. Ostensibly, the granted issue asks whether the challenged testimony was admissible as a prior inconsistent statement of the government witness. *See* Mil.R.Evid. 613. However, defense counsel's original motion at trial and appellate defense counsel's brief suggest additional evidentiary theories which should be con-

1. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

sidered in determining the admissibility of the testimony of Swinderman. We believe these questions are also embraced in the granted issue and must be addressed.

■ The record of trial makes clear that the defense offered the testimony of Swinderman to impeach the government witness Simmons. Impeachment can be defined as an attack on the credibility or believability of a witness. Mil.R.Evid. 607; *see McCormick's Handbook of the Law of Evidence* § 33 (E. Cleary 2d ed. 1972). In general, it is a process of explaining away a witness' testimony as to the existence of a fact at issue in a trial. 3A *Wigmore, Evidence* § 874 (Chadbourne rev. 1970). In the present case, Simmons was the critical government witness as to the facts constituting appellant's guilt of the charged offenses. Accordingly, the defense's effort to demonstrate to the members that Simmons' testimony should not be believed is understandable.

The process of impeachment can embrace several different methods or lines of attack. *See McCormick, supra.* One method is to show that the witness has a bad character for truthfulness. Mil.R.Evid. 608(a) and (b). The inference which may be drawn from the witness' bad character for truth telling is that he is not telling the truth in his testimony at trial. *See Wigmore, supra,* §§ 920–23. A second method of impeachment is to show that a witness has made a prior statement inconsistent with his trial testimony. Mil.R.Evid. 613. By showing self-contradiction, the witness can be discredited as a person capable of error. *See Wigmore, supra,* § 1017. A third method of impeachment is to show a "[b]ias, prejudice, or any [other] motive" on the part of the witness "to misrepresent." Mil.R.Evid. 608(c). The idea here is to show a hostility of emotion or partiality of mind of the witness from which the fact-finder can infer that the witness' testimony is distorted. *See Wigmore, supra,* § 940. A fourth method of impeachment is contradiction. Mil.R.Evid. 607; *see United States v. Benedetto,* 571 F.2d 1246, 1250 n. 7 (2d Cir.1978). This line of attack involves showing the

tribunal the contrary of a witness' asserted fact, so as to raise an inference of a general defective trustworthiness. *Wigmore, supra,* § 1000; *McCormick, supra,* § 47. The failure of the parties at trial to distinguish between these different methods of impeachment led the military judge to bar the testimony of Swinderman in the present case. *See Wigmore, supra,* § 943.

■ Trial counsel twice urged the military judge to bar the testimony of Swinderman concerning Simmons' purported purchase of drugs from Kevin Lee on the basis of Mil.R.Evid. 608(b). He argued that extrinsic evidence of specific acts of conduct of a witness are not admissible for the purpose of attacking the credibility of the witness. The military judge agreed. The problem with such a rationale is that the application of Mil.R.Evid. 608(b), as with its counterpart Fed.R.Evid. 608(b), is limited to the situation where extrinsic evidence of a witness' conduct is introduced to show a witness' general character for truthfulness. *United States v. James,* 609 F.2d 36, 46 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Diecidue,* 603 F.2d 535, 550–51 (5th Cir.1979); *United States v. Opager,* 589 F.2d 799, 801 (5th Cir.1979); *United States v. Rios Ruiz,* 579 F.2d 670, 672–73 (1st Cir. 1978). As pointed out earlier, there are several different methods to attack a witness' credibility other than by showing his bad character for truthfulness. *See Wigmore, supra,* § 874 n. 1. Accordingly, to the extent the military judge broadly applied Mil.R.Evid. 608(b) to these other methods of impeachment, he erred.

The next question we must address is whether appellant made clear to the trial judge that he was offering the testimony of Swinderman for the purpose of impeaching Simmons by a method other than attacking his general character for truthfulness. *See* Mil.R.Evid. 103(a)(2) and (b). Then it must be determined whether the offered evidence was admissible under the rules of evidence applicable to this method of impeachment.

## A

■ Defense counsel in his final effort to secure admission of the proffered testimony asserted that it was extrinsic evidence of a prior inconsistent statement of Simmons. *See* Mil.R.Evid. 613. He noted that on cross-examination Simmons denied that he purchased drugs or attempted to purchase drugs from Kevin Lee on June 5, 1980. Accordingly, he asserted that Swinderman's testimony concerning Simmons' statement to Lee was evidence of a statement inconsistent with his trial testimony.

Not a single case was offered at trial or on appeal to show that such a statement falls within this rule of evidence. This statement was purportedly made by Simmons during the very incident which was in issue. It was not evidence of a prior assertion of fact but it was evidence of the fact asserted. *See Wigmore, supra,* §§ 1017 and 1040. Accordingly, we hold the proffered testimony was not admissible under this evidentiary rule to show Simmons was capable of error in his testimony.

## B

Defense counsel earlier at trial indicated to the military judge that the testimony of Swinderman was being offered to show that Simmons lied on the stand to the members. In this regard his intention was to introduce extrinsic evidence of the fact that, contrary to his trial testimony, Simmons had purchased or attempted to purchase drugs from Kevin Lee on June 5, 1980. If his ultimate purpose in introducing this evidence was to show that Simmons was also lying in his testimony concerning appellant's drug conduct, this method of impeachment can be characterized as contradiction. *See Wigmore* § 1000 and *McCormick* § 47, both *supra.*

■ The normal rule of impeachment by contradiction is that a witness may not be contradicted by extrinsic evidence on a collateral matter. *See Wigmore, supra,* §§ 1001–04. Since the defense could not adduce the contradicting evidence from Simmons on cross-examination, it was forced to call an additional witness for this purpose. Swinderman's testimony was therefore extrinsic evidence. *See Wigmore, supra,* § 878. Moreover, in the federal courts, a more lenient rule applies in that a witness who makes a collateral assertion on direct examination may be contradicted by extrinsic evidence. *United States v. Clemente,* 640 F.2d 1069, 1082–83 (2d Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981); *Wigmore* § 1007 and *McCormick* § 47, both *supra.* Finally, in showing such contradiction either on a material issue or a collateral matter asserted on direct-examination, Fed.R.Evid. 608(b) does not bar the use of extrinsic evidence of specific acts of a witness' conduct. *See United States v. Opager* and *United States v. Benedetto,* both *supra.*

The record reveals that on direct examination Simmons testified that he approached the police in March of 1980 because he was tired of drugs and dealing and wanted to rid the base of drugs. This specific fact was asserted to show that his cooperation with the police as an informant stemmed from his adverse state of mind towards drugs in March of 1980. The proffered testimony of Swinderman was that Simmons in June of 1980 purchased or attempted to purchase drugs from Lee off base. This fact was asserted to show that at a later time Simmons' state of mind towards drugs was not adverse. Strictly speaking neither the specific fact asserted by Simmons nor the evidentiary inference drawn therefrom are contradicted by the proffered testimony of Swinderman.

■ Of course, on cross-examination Simmons testified that he had not purchased or attempted to purchase drugs from any person other than appellant since March of 1980. *See United States v. Batts,* 558 F.2d 513 (9th Cir.1977), *cert. denied,* 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978). This asserted fact would clearly have been contradicted by the testimony of Swinderman. Nevertheless, we are not convinced that the federal practice is so broad as to allow extrinsic evidence to be used to con-

tradict a witness on a collateral matter[2] asserted on cross-examination. *See United States v. Benedetto, supra; United States v. Beno,* 324 F.2d 582 (2nd Cir.1963), *cert. denied,* 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964).

## C

■ A third reason provided by defense counsel supporting introduction of the proffered testimony of Swinderman was that it showed "[b]ias, prejudice, or . . . [a] motive to misrepresent" on the part of Simmons. Mil.R.Evid. 608(c). As indicated earlier, Mil.R.Evid. 608(b) does not prohibit the introduction of specific acts of conduct of a witness for this purpose. The question is whether Swinderman's testimony is probative of Simmons' motive for testifying in this case. *See United States v. Diecidue, supra* at 550. We believe that it was.

On direct examination Simmons testified that he voluntarily cooperated with the police in this drug operation because he was tired of drugs and wished to rid the base of them. Such testimony bolstered his credibility to the extent that his testimony at trial could be viewed as the act of a concerned, law-abiding service-member interested in preserving the military efficiency of his base. In other words, he was probably telling the truth because he had good intentions and was impartial towards appellant.

Yet, on cross-examination, he admitted that he owed appellant $390.00. He further admitted that he discussed this matter with police investigators who told him that they could do nothing about this debt. Finally, he admitted that the only person caught as a result of his efforts was appellant. From this testimony, it is clear that the issue of bias on the part of Simmons was raised in this case.

Swinderman's proffered testimony was some evidence that Simmons had purchased or attempted to purchase drugs from Kevin Lee on June 5, 1980. It is probative of Simmons' motive in testifying in this case because it indicates his commitment to combat drugs was not long-lasting or sincere. To the extent that his proffered motive for testifying in this case is undermined, the members could have given greater weight to the defense showing of a hostile motive or partiality in his testimony. Accordingly, Swinderman's testimony should have been admitted to show Simmons' bias and prejudice.

---

■ The final question in this case is whether appellant's conviction should be overturned because the proffered testimony of Swinderman was not admitted by the military judge. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The reason the proffered testimony was admissible in this case was to undermine Simmons' contention as to a proper motive for testifying in this case, i.e., his anti-drug crusade. Other evidence was introduced in this case which undermined this purported commitment to reject drugs and assist in their detection. The defense called Airman David McGuffey to the stand. He testified that on four occasions during March and April 1980 Simmons personally told him that he was under the influence of drugs. In addition, the members knew that the OSI had paid Simmons $150.00 for his services and he was never prosecuted for his own drug offenses. This evidence plus the earlier-mentioned testimony of Simmons provided a sufficient basis for deciding the question of his bias. *See United States v. James, supra* at 47–48. Accordingly, we hold that appellant was not prejudiced by the military judge's error.

**2.** As explained in Part C of this opinion, Simmons' testimony on direct examination and cross-examination could be considered probative of his bias and prejudice. In this light, his testimony need not be characterized as concerning a collateral matter and impeachment by contradiction using extrinsic evidence might

be permissible. *See* 3A *Wigmore, Evidence* § 1005(b) (Chadbourne rev. 1970). However, defense counsel at trial did not make clear to the trial judge that he was employing this complex theory of contradiction in seeking admission of Swinderman's testimony. *See* Mil.R. Evid. 103(a)(1).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COOK, Judge (concurring):

I agree that admission of the proffered testimony of Swinderman would have cast doubt on Simmons' allegedly noble motive for testifying against appellant. The proffered testimony would have lent support to appellant's contention that Simmons was biased against appellant. Mil.R.Evid. 608(c). However, as the majority opinion correctly notes, the court members were well aware of several of the reasons Simmons had to be biased against appellant. Thus, it hardly seems to matter whether Simmons had shaken his involvement with drugs, as far as his motives are concerned. In any event, Simmons' credibility appears to have had very little to do with proving appellant's guilt. For example I assume that, when appellant got into the automobile with the undercover Austin, Texas, police officer and offered to sell him more of the same methamphetamine he had just sold to Simmons, any questions regarding Simmons' bias became academic.