# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

### Staff Sergeant ROCKY L. LISTER
### United States Air Force

### ACM 38543 (recon)

### 18 August 2015

Sentence adjudged 23 August 2013 by GCM convened at Beale Air Force Base, California. Military Judge: Christopher M. Schumann.

Approved Sentence: Bad-conduct discharge, confinement for 2 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Anthony D. Ortiz and Major Christopher D. James.

Appellate Counsel for the United States: Major Daniel J. Breen; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

ALLRED, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

UPON RECONSIDERATION

<u>This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.</u>

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of indecent conduct for secretly recording a woman who was unclothed, assault consummated by a battery upon his then-girlfriend, and sending a partially-clothed picture of himself to a subordinate, in violation of Articles 120, 128, and

134, UCMJ, 10 U.S.C. §§ 920, 928, 934.[1] The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 2 years, and reduction to E-1.

The appellant argues: (1) the military judge erred in finding that the government had disproven the existence of unlawful command influence (UCI) beyond a reasonable doubt, (2) the conviction for sending the photograph to his subordinate is legally and factually insufficient, (3) post-trial processing delay warrants sentence relief, (4) his trial defense counsel were ineffective, and (5) the military judge erred by prohibiting cross-examination of a government witness concerning prior nonjudicial punishment.

On 17 June 2015, this court issued its decision in this case, affirming the findings and sentence. The panel that originally decided this case subsequently granted the appellant's request for reconsideration. Having reconsidered our opinion, we again affirm the findings and sentence.

*Background*

The appellant met and developed a romantic relationship with then-Staff Sergeant (SSgt) WM while on deployment to Ecuador. Upon returning from deployment, the two began living together and did so until the appellant deployed to Iraq approximately 18 months later. Their relationship was tumultuous at times, including physical assaults and arguments. SSgt WM's testimony about several occasions of abuse led to the appellant's conviction for striking and grabbing her on divers occasions during an eight-month period.

After the appellant and SSgt WM ended their relationship, he met and married another woman. The appellant and his wife regularly visited a tanning salon. On one occasion in November 2011, the appellant positioned his cellular telephone so that it could record the person tanning in the room next to his. The female occupant of the room discovered his telephone, reviewed the video, saw that it depicted her nude body, and deleted it. The victim encountered the appellant as they were leaving the tanning salon and gave him his phone back. He apologized and said he thought he had been recording his wife.

Senior Airman (SrA) AM was a security forces member and the appellant's subordinate. Although their relationship began professionally, the appellant asked SrA AM to dinner shortly after meeting her even though he knew she was married. She laughed it off. Some time later, the appellant sent SrA AM a text message with an embedded photograph of himself shirtless. SrA AM testified that after she rebuffed the

---

[1] The appellant was found not guilty of touching the breast of one of his subordinates, making a threat to kill his then-girlfriend, and sending a picture of his genitalia to a subordinate, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934.

appellant's dinner request and did not respond to his photograph, he began to "brief" (correct) her more often about what he claimed were dress and appearance violations.

Additional facts necessary to resolve the assignments of error are included below.

*Unlawful Command Influence*

The appellant alleges that apparent unlawful command influence (UCI) so permeated the Air Force at the time of his trial that it was impossible for him to receive a fair trial. The appellant asked the military judge to dismiss all charges on this same basis. The military judge denied the motion. According to the appellant, it was impossible for him to receive a fair trial due to the cumulative effect of comments made by the President of the United States, the Chief of Staff of the Air Force, the former and current Secretaries of Defense, and other senior military leaders.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (internal quotation marks omitted).

The burden of raising the issue of unlawful command influence rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* (citation omitted). To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks omitted). "'Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.'" *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002))

Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo. *See United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).

The appellant's arguments at trial were two-fold: first, that various comments by officials including the President of the United States, the Secretary of Defense, and other Air Force senior leaders caused the general and special court-martial convening authorities to feel compelled to refer this case to trial; and second, that the members would feel compelled to convict. Trial defense counsel sought an interview with the general court-martial convening authority (GCMCA) prior to trial. They were initially told their request would be granted but later were denied an interview. No explanation was provided for the changed decision.

The military judge initially ruled that the defense met its burden to establish facts which, if true, amounted to unlawful command influence, thus shifting the burden to the prosecution. The GCMCA then granted a telephonic interview with defense counsel. Following that interview, and before the military judge finally ruled on the UCI motion, the defense was given the opportunity to call the GCMCA as a witness or offer other evidence. They declined, noting that the burden was upon the government.

The prosecution submitted affidavits from both the special and general court-martial convening authorities. Both convening authorities' affidavits said, in effect, that their decisions were their own and were not influenced by the senior leaders' statements about sexual assault. The military judge noted that although conclusory, the affidavits were unrebutted. He then accepted the convening authorities' statements and found that UCI had been disproven beyond a reasonable doubt.

On appeal, the appellant renews his argument that the government failed to disprove the existence of UCI beyond a reasonable doubt.[2] The appellant offers no legal argument or theory not offered at trial. Rather, he simply argues that the military judge got it wrong. We disagree.

We have ourselves reviewed the entire record, including the affidavits and the members' responses during the voir dire process. The military judge's findings of fact are amply supported by the record and are not clearly erroneous. We have considered the contents of the convening authorities' affidavits as well as the GCMCA's changing decisions with respect to being interviewed by defense counsel. While we recognize that UCI has been called the "mortal enemy" of military justice, *United States v. Lewis*, 63 M.J. 405, 407 (C.A.A.F. 2006), we agree with the military judge that on these facts, the prosecution met its burden to disprove UCI beyond a reasonable doubt. An objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceedings. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

---

[2] The appellant does not now challenge the composition of the panel or argue that actual or apparent unlawful command influence (UCI) existed with respect to anything other than the decision to refer the case to trial.

*Legal and Factual Sufficiency*

The appellant next argues that the charge and specification alleging that he sent a picture of himself shirtless to a subordinate is legally and factually insufficient because there is no evidence establishing when the picture was sent. We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "Proof beyond a reasonable doubt . . . does not mean that the evidence must be free of conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The specification alleged that the appellant sent the image in question between on or about 1 June 2011 and on or about 30 September 2011. SrA AM, the recipient of the photograph, testified that she received the image from the appellant while he was her rater, which she testified was between March 2011 and October 2011. When she was asked to clarify the date range, she said "the spring" and "about the springtime," although she said she could not remember exact dates because she had tried to forget what happened. When trial counsel pressed further and asked, "June, July, or August, somewhere around there?" she replied, "Yes, sir it was summer, it was summertime."

"A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense . . ., but the proof does not conform strictly with the offense alleged in the charge." *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999). To prove a fatal variance, the appellant must show both that the variance was material and that he was substantially prejudiced by the variance. *Id*. A material variance is one that substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment for the offense. *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009). A variance is prejudicial when it puts the appellant at risk of another prosecution for the same conduct, misleads him to the extent he is unable to prepare for trial, or denies him the opportunity to defend against the charge. *Id*.

Minor variances, such as the location or the date an offense was allegedly committed, do not necessarily change the nature of the offense. *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003). Further, the words "on or about" in relation to the dates alleged in the offense generally connote any time within a few weeks of the "on or about" date. *United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992). However, where the major focus of the litigation centers on the time, place, and nature of the interactions between the appellant and others, a variance as to date can result in a material and prejudicial fatal variance. *See United States v. Parker*, 59 M.J. 195 (C.A.A.F. 2003).

We find no variance between the allegations and the evidence. Whether we credit SrA AM's statement that it was "the spring," "summertime," or her apparent adoption of trial counsel's suggestion that it was "June, July, or August," we find that each of these answers is "between on or about 1 June 2011 and on or about 30 September 2011." Even assuming variance existed, it was not material. The specific date of the image's transmission was not the major focus of the litigation with respect to that offense, and we discern no material prejudice to the appellant's ability to defend against the charge.

We have considered the evidence in the light most favorable to the prosecution. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by the appellant, we find the evidence legally sufficient to support the conviction. Moreover, we are ourselves convinced of his guilt beyond a reasonable doubt.

*Post-Trial Delay*

The convening authority took action 173 days after trial concluded. We review de novo an appellant's claim that "he has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006).

There is a presumption of unreasonable delay when more than 120 days elapse between completion of trial and convening authority action. *Id.* at 142. Because the 173-day delay in this case is facially unreasonable, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. If we are able to conclude directly that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006).

Additionally, we may grant sentence relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), even when we find no prejudice in unreasonable post-trial delays. *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002); *see also United States v. Toohey*, 63 M.J. 353,

362 (C.A.A.F. 2006) (finding delays were "such that tolerating them would adversely affect the public's perception of the fairness and integrity of the military justice system"). However, "[a]ppellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely . . . review." *Tardif*, 57 M.J. at 225.

The appellant asserts no prejudice resulting from the delay. Having reviewed the record, we conclude that *Moreno* relief is not warranted.[3] Instead, he urges us to provide *Tardif* relief "to send a clear message to the Air Force that this Court will not tolerate unreasonable post-trial delay."

Trial concluded on 23 August 2013. The 810-page record of trial was authenticated on 20 November 2013. The staff judge advocate's recommendation was served on trial defense counsel and the appellant on 21 and 28 January 2014, respectively. The appellant submitted his clemency request without any mention of concern about post-trial processing delays. The staff judge advocate completed his addendum on 12 February 2014, and the convening authority took action on that same day.

We do not believe *Tardif* relief is warranted in this case. While it is true that post-trial processing took longer than is facially reasonable, we do not find the chronology of this case would adversely affect the public's perception of the fairness and integrity of the military justice system.

*Effectiveness of Counsel*

The appellant next alleges that his counsel were ineffective because they (1) failed to call four witnesses who would contradict government witnesses and (2) failed to review the mental health records of SSgt WM. We review claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

---

[3] *United States v. Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration, (2) anxiety and concern, and (3) impairment of ability to present a defense at a rehearing. 63 M.J. 129, 138–39 (C.A.A.F. 2006). None are present or alleged in this case. While we agree that *Moreno* violations are unacceptable, we find beyond a reasonable doubt that the appellant was not harmed by the delay and is thus not entitled to relief under *Moreno*.

The deficiency prong requires the appellant to show his counsel's performance fell below an objective standard of reasonableness according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In doing so, the appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229). The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "we need not determine whether any of the alleged errors [in counsel's performance] establish[ ] constitutional deficiencies under the first prong of *Strickland* . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of *Strickland*." *See United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

The appellant submitted for our consideration statements from several potential witnesses as well as his own declaration. We ordered trial defense counsel to submit affidavits responsive to the appellant's allegations.

The appellant's declaration states that had his wife been called, she would have testified that the appellant had intended to record her, not the victim, at the tanning salon. His wife's recently-signed declaration supports that assertion.[4] However, both trial defense counsel interviewed the appellant's wife prior to trial. At that time, she told them that she did not know whether the appellant's recording was intentional or accidental and that she was not sure what happened at the salon. Additionally, defense counsel had legitimate tactical concerns not to expose the appellant's wife to government interviews and cross-examination, as they believed she might enable them to identify additional misconduct.[5]

---

[4] When we initially considered this case, the appellant's granted motion to submit his wife's affidavit (including the affidavit itself) was inadvertently not included in the record of trial. This opinion on reconsideration follows our review of those documents.

[5] The appellant was initially facing charges relating to only one victim. As his trial defense counsel prepared for trial and sent requests to potential character witnesses identified by the appellant, several of those potential character witnesses came forward to report the appellant's inappropriate behavior toward them. Several of those women were later named as alleged victims.

The remaining witnesses identified by the appellant would have testified about the relationship between him and SSgt WM. Two witnesses, the appellant's brother and his brother's friend, would have testified that one of the assaults described by SSgt WM did not occur. According to affidavits submitted by trial defense counsel, during pretrial interviews, both of these witnesses offered to fabricate testimony about the incident to support the appellant.

A third witness would have testified that he never saw the appellant be abusive toward SSgt WM and that the appellant told him the recording in the tanning salon was an accident. Even if true, the latter statement would have constituted inadmissible hearsay.

Finally, the appellant asserts that because SSgt WM's sentencing testimony was "replete with testimony about the psychological effects the alleged incidents had on her," his trial defense counsel were ineffective for not seeking discovery of her mental health records. SSgt WM's sentencing testimony spanned only two pages in the 810-page record. While she did testify about the effects of the assaults and mentioned seeking mental health counseling, trial defense counsel were prepared to cross-examine her on that topic but made the tactical decision not to do so after they assessed the manner in which she testified.

Therefore, in assessing the appellant's allegation of ineffective assistance of counsel, we find the appellant failed to meet his burden to establish his counsel were deficient such that their performance fell below an objective standard of reasonableness according to the prevailing standards of the profession. Because we find trial defense counsel were not deficient, we need not address the prejudice prong of *Strickland*. However, even were their performance deficient, the appellant has failed to establish prejudice or a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

*Restriction on Cross-Examination*

The appellant avers that the military judge erred in precluding cross-examination of SrA AM about punishment she received for misusing her government travel card (GTC). We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999). Under that analysis, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Gallagher*, 66 M.J. 250, 253 (C.A.A.F. 2008). The abuse of discretion standard is strict, calling for the challenged action to be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)) (internal quotation marks omitted). A military judge is given broad discretion to impose reasonable limitations on cross-examination. *Id.* at 129. The abuse of discretion standard

recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

SrA AM had testified that the appellant had "briefed" (i.e., corrected) her at various times about her dress and appearance. A court member asked a question on that topic:

> Q: With regard to the briefings that you referenced from Sergeant Lister on your dress and appearance, did you ever receive any briefings on your dress and appearance from any other officers, or [noncommissioned officers], or was it just Sergeant Lister?
>
> A: It was just Sergeant Lister and I never received any paperwork, other than [memoranda for record] that were saved on the computer.

Based solely on that question and answer, trial defense counsel sought to introduce evidence that SrA AM had received nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, in 2008 for misusing her GTC. The question trial defense counsel wanted to ask was: "Isn't it true that you received an Article 15 back in 2008 for GTC misuse?" The military judge disallowed the question, finding that it was not proper impeachment because the witness' answer was limited to "paperwork" concerning violations of dress and appearance standards. The appellant now challenges that ruling.

Both at trial and on appeal, the parties have confused impeachment by contradiction with impeachment based on prior acts of dishonesty. The distinction is critical to the analysis.

"Impeachment by contradiction is a line of attack that 'involves showing the tribunal the contrary of a witness' asserted fact, so as to raise an inference of a general defective trustworthiness' or that the [witness] is capable of error." *United States v. Piren*, 74 M.J. 24, 27 (C.A.A.F. 2015) (quoting *United States v. Banker*, 15 M.J. 207, 210–11 (C.M.A. 1983)).

Conversely, Mil. R. Evid. 608(b) allows for impeachment by specific instances of conduct "for the purpose of attacking or supporting the witness' *character* for truthfulness." (Emphasis added). When using this method of impeachment, the questioner must inquire about the underlying conduct, not the existence of administrative sanction resulting therefrom. *See United States v. Robertson*, 39 M.J. 211, 214 (C.M.A. 1994).

Trial defense counsel's desire to introduce evidence *of the nonjudicial punishment* could thus serve only to impeach by contradiction SrA AM's statement that she had "never received any paperwork." Had trial defense counsel wanted to impeach SrA AM with evidence of specific instances of prior dishonesty, the proper question would have asked about the underlying conduct, not the nonjudicial punishment itself.

The military judge concluded that SrA AM's answer that she had "never received any other paperwork" was in response to a question concerning paperwork relating to having been "briefed" or corrected about her dress and appearance. This factual finding is amply supported by the record and not clearly erroneous. Therefore, as the existence of the prior nonjudicial punishment would not contradict the witness' statement, the military judge did not abuse his discretion in excluding it.[6]

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are

**AFFIRMED**.



FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

---

[6] Both parties urge us to decide whether the military judge properly concluded that Senior Airman AM's misuse of her government travel card did not "fit[] within the parameters of a false statement thereby subjecting it to be a valid grounds for cross-examination." We decline to do so, as that was not the theory under which the evidence was offered and, even if it were, the proposed question by trial defense counsel would not have been proper under that theory of admissibility.