IN THE UNITED STATES COAST GUARD
COURT OF CRIMINAL APPEALS

| | |
|---|---|
| In re Y.B.,<br> Petitioner<br><br>United States,<br> Real Party in Interest<br><br>James D. FINK,<br>Fireman (E-3), U.S. Coast Guard<br> Real Party in Interest | 22 November 2022<br><br>PETITION FOR EXTRAORDINARY<br>RELIEF, FILED 21 OCTOBER 2022<br><br><br>MISC. DOCKET NO. 001-23<br><br>BEFORE MCCLELLAND, BRUBAKER &<br>HERMAN<br><br><u>ORDER</u> |

BRUBAKER, Judge (joined by Chief Judge McCLELLAND and Judge HERMAN):

In the pending general court-martial of *United States v. Fink*, the military judge ruled that Seaman (SN) G.C. may testify that he had a sexual encounter with Petitioner a few months prior to the accused's alleged assault of Petitioner. The prior alleged encounter has no connection to the charged sexual assault other than to contradict statements made by Petitioner. Petitioner asks this Court to issue a writ of mandamus requiring the military judge to exclude this evidence under Military Rule of Evidence (M.R.E.) 412, Manual for Courts-Martial, United States (2019 ed.). We conclude Petitioner is entitled to relief and grant the writ.

*Background*

Prior to trial, trial defense counsel moved for a ruling on the admissibility of evidence under M.R.E. 412 that:

(1) there were similarities between the encounter with the accused and a prior sexual encounter between Petitioner and SN G.C., after which she claimed to SN G.C. that she did not remember the encounter due to intoxication by cold medicine;
(2) the prior incident with SN G.C. led to rumors within the unit and Petitioner was concerned about the possibility of additional rumors because of her encounter with the accused; and
(3) Petitioner misrepresented to investigators that she had not had sex for two years prior to the incident with the accused.

The Government and special victims' counsel for Petitioner opposed the motion. After conducting a closed hearing, during which SN G.C. and Petitioner testified, the military judge made the following salient findings of fact:

(1) During an interview with investigators, Petitioner alleged that on the night of 5 March 2021, she went to sleep alone and awoke to find the accused standing naked next to her, stroking his penis.

(2) Petitioner told investigators: "I have not been intimate or seeing, like been, dating for the past two years. So, after that incident, I do feel like I've been touched" in the vaginal area, adding that her vagina felt "like stretched." Pet. Ex. H at 2–3.

(3) After the interview, Petitioner agreed to conduct a controlled call with the accused. During this call, Petitioner asked "what happened last night?" and a lengthy back and forth ensued. After the accused stated he thought he asked her about engaging in sexual activity and she assented, Petitioner responded, "I don't recall that. And, you're my shipmate, and I don't do that with my shipmates." Pet. Ex. H at 3.

(4) SN G.C. testified that he had vaginal intercourse with Petitioner within the few months prior to March 2021. This encounter occurred in her barracks room sometime in late 2020 or early 2021. They were "hanging out" one night when he asked if she wanted to be "friends with benefits" or words to that effect. At first, she did not want to, but later changed her mind and the two had sex. The next day, SN G.C. asked about the encounter via text message. Petitioner denied it happened, indicating that she was on cough medicine. There was no further romantic relationship between the two.

(5) Petitioner testified that she reported to her unit in January 2020 and lived in the barracks during her pipeline training. She moved out of the barracks in September 2020. She denied having sex with SN G.C. or exchanging text messages with him about the alleged encounter.

In his ruling, the military judge rejected two of the three parts of the Defense's motion, concluding that evidence of rumors and of purported similarities between the encounter with SN G.C. and with the accused were inadmissible. He concluded, however, that SN G.C.'s testimony was relevant "for its tendency to contradict [Petitioner's] statements to law enforcement in her initial report," and that what she told investigators "is not a collateral issue but is instead a material detail of her initial unrestricted report of sexual assault." Pet. Ex. H at 8. Accordingly, he ruled the Defense may, in cross-examination, ask Petitioner about her alleged sexual encounter with SN G.C.

He noted, however, that extrinsic evidence for impeachment by contradiction on a collateral matter is "only admissible if the collateral matter was raised during the witness' direct examination." *Id.* at 9 (quoting *United States v. Braimer*, 81 M.J. 572, 581 (N-M. Ct. Crim. App. 2021)). Thus, "If [Petitioner] raises the issue of what she said to investigators during her direct examination, the Defense would be entitled to call SN G.C. to contradict her testimony. The impeachment by contradiction doctrine would prohibit the Defense from raising an issue on cross-examination and then contradicting that testimony with extrinsic evidence during their own case." *Id.*

During trial, Petitioner testified for the Government. She stated she woke up to find her pants and underpants removed and the accused standing over her naked, stroking his penis. During direct examination, she made no mention of her vagina feeling stretched or not engaging

2

in sexual activity with shipmates or for any period of time prior to the alleged assault. During cross-examination, trial defense counsel, consistent with the military judge's ruling, confronted Petitioner with her statement to investigators that she had not been intimate for two years preceding the alleged assault and with whether she had been intimate with SN G.C. Petitioner admitted she told investigators that, and attested to its veracity, denying having been intimate with SN G.C. Trial defense counsel also confronted Petitioner with her statement to the accused that she does not "do that with shipmates." She responded, "Correct, I don't have intimate relations with shipmates." Pet. Ex. L at 4:06.

During its case, the Government sought introduction of the transcript of the controlled call between Petitioner and the accused. Trial counsel offered a redacted version that struck the statement, "I don't do that with my shipmates." Trial defense counsel objected under M.R.E. 106, arguing that the entirety of the transcript, including this statement, ought in fairness to be considered at the same time. The military judge sustained the objection and admitted an unredacted transcript.

As the Government approached the end of its case-in-chief, the military judge held a session outside the presence of the members. Trial defense counsel asserted that the nature of the Government's case opened the door to testimony by SN G.C. to impeach Petitioner by contradiction. The military judge agreed. He noted that by testifying, Petitioner had put her credibility in issue. He concluded that although the statement, "I don't do that with shipmates," was admitted under M.R.E. 106, it was part of the Government's case, and that he was going to allow, as impeachment by contradiction, the Defense to call SN G.C. The military judge granted an overnight recess, during which Petitioner sought, and we granted, a stay of proceedings to allow our consideration of this petition.

*Law*

Article 6b, Uniform Code of Military Justice (UCMJ), grants Courts of Criminal Appeals jurisdiction to issue writs of mandamus when needed to enforce certain protections afforded to alleged crime victims. Article 6b(e), UCMJ; *In re C. P-B*, 78 M.J. 824, 827 (C.G. Ct. Crim. App. 2019). This includes the protections of M.R.E. 412. Article 6b(e)(4)(c), UCMJ. A writ of mandamus is "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted). The writ has traditionally been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, (1943) (citations omitted). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power" justify the invocation of the writ. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) (cleaned up).

To prevail, a petitioner seeking an extraordinary writ must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)).

3

M.R.E. 412 is a rule of exclusion that prohibits evidence of "other sexual behavior" unless it meets certain exceptions. M.R.E. 412(a)(1); *United States v. Gaddis*, 70 M.J. 248, 251 (C.A.A.F. 2011). Its purpose is "to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to sexual offense prosecutions." *Gaddis*, 70 M.J. at 252 (cleaned up).

The relevant exception in this case is "evidence the exclusion of which would violate the accused's constitutional rights." M.R.E. 412(b)(3). An accused seeking admission of evidence under this exception bears the burden of showing that the evidence is "relevant, material, and favorable to his defense," and thus necessary. *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010). "The term 'favorable' as used in both Supreme Court and military precedent is synonymous with 'vital.' " *Id.* (cleaned up). The probative value of the evidence must be balanced against and outweigh countervailing issues, such as the dangers of unfair prejudice, confusing the issues, or wasting time. *Gaddis*, 70 M.J. at 255.

Evidence is relevant if it has "any tendency to make the existence of a fact more or less probable than it would be without the evidence." M.R.E. 401(a). Evidence is material if it is "of consequence to the determination of the accused's guilt." *Smith*, 68 M.J. at 448 (internal quotation marks and citations omitted). Assessing materiality involves looking at "the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of other evidence in the case pertaining to this issue." *Id*. (internal quotation marks and citations omitted).

The use of extrinsic evidence to impeach a witness is highly circumscribed. *See, e.g.,* M.R.E. 608, 609, 613. The rules on the use of extrinsic evidence to impeach depend on the method of impeachment. Broadly, there are four methods of impeachment: character for untruthfulness; prior inconsistent statements; bias, prejudice, or motive to misrepresent; or impeachment by contradiction. *United States v. Banker*, 15 M.J. 207, 210 (C.M.A. 1983). Extrinsic evidence to prove a character for untruthfulness is, with a limited exception, prohibited. M.R.E. 608(b) ("Except for a criminal conviction under [M.R.E.] 609, extrinsic evidence is not admissible to prove specific instances of a witness' conduct in order to attack or support the witness' character for truthfulness."). On the other hand, extrinsic evidence is permitted to show bias, prejudice, or motive to misrepresent. M.R.E. 608(c).

Here, the military judge concluded that the testimony of SN G.C. is constitutionally required as impeachment of Petitioner by contradiction. Impeachment by contradiction, though scantly mentioned in the Military Rules of Evidence,[1] is a common law doctrine recognized by military courts. *Banker*, 15 M.J. at 210; *United States v. Montgomery*, 56 M.J. 660, 668 (A. Ct. Crim. App. 2001). "This line of attack involves showing the tribunal the contrary of a witness' asserted fact, so as to raise an inference of a general defective trustworthiness." *Banker*, 15 M.J. at 210.

---

[1] M.R.E.s 304(e)(1) and 311(c)(1) address the specific context of using otherwise suppressed evidence to impeach an accused's in-court testimony by contradiction.

The general rule is that if a witness's asserted fact is "collateral," then extrinsic evidence to contradict it is inadmissible. *Id.* A matter is "collateral" if "the fact could not be shown in evidence for any purpose independent of the contradiction." *United States v. Langhorne*, 77 M.J. 547, 555 (A.F. Ct. Crim. App. 2017) (quoting *United States v. Harris*, 542 F.2d 1283, 1306–07 (7th Cir. 1976)). *See also, United States v. Cobia*, 53 M.J. 305, 310 (C.A.A.F. 2000); *United States v. Kamra*, No. 21-1615, 2022 WL 4998978, at *4 (3d Cir. Oct. 4, 2022); *United States v. Beauchamp*, 986 F.2d 1, 4 (1st Cir. 1993) ("A matter is considered collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness."); *Head v. Halliburton Oilwell Cementing Co.*, 370 F.2d 545, 546 (5th Cir. 1966) ("The test for determining what is a collateral matter was laid down over one hundred years ago . . . . Professor Wigmore phrases it thusly: 'Could the fact as to which error is predicated have been shown in evidence for any purpose independently of the contradiction?' ") (quoting JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 1003 (3rd ed.)).

Like military courts, Federal Circuit Courts generally bar a criminal defendant's use of extrinsic evidence to impeach a witness by contradiction on a collateral matter. For instance, in *Beauchamp*, the United States Court of Appeals for the First Circuit addressed the defendant's contention that the value of his right to cross-examine a witness for the purpose of "exposing falsehood" was "vastly diminished" if he could not also present extrinsic evidence demonstrating that the witness had lied. *Beauchamp*, 986 F.2d at 3. The court rejected the contention, noting it is "well established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter. Thus, it is often said that when a witness testifies to a collateral matter, the examiner must take the answer, i.e., the examiner may not disprove it by extrinsic evidence." *Id.* (cleaned up). *See also, United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) ("While contradiction is a valid method of impeachment, it is well-settled that one may not impeach by contradiction regarding collateral or irrelevant matters, and that a party may not contradict for the sake of contradiction.") (cleaned up).

As a narrow exception to the general rule, military courts allow that "a witness who makes a collateral assertion *on direct examination* may be contradicted by extrinsic evidence." *Banker*, 15 M.J. at 210 (emphasis added); *United States v. Braimer*, 81 M.J. 572, 581 (N-M. Ct. Crim. App. 2021); *Langhorne*, 77 M.J. at 556. In *United States v. Dominguez*, the court applied this exception to a recorded statement that, although made out-of-court rather than during direct testimony, was introduced as substantive evidence under the residual hearsay exception. 81 M.J. 800, 816–17 (N-M. Ct. Crim. App. 2021).

*Analysis*

As a starting point, we emphasize that this case is not about an accused's Sixth Amendment confrontation rights, unlike *United States v. Gaddis*. 70 M.J. at 256–57. Over objection, the military judge permitted the accused to confront Petitioner with her purportedly false statements and to inquire into her alleged sexual encounter with SN G.C. Nor, unlike *United States v. Ellerbrock*, is it about the right to present evidence of bias or motive to fabricate. 70 M.J. 314, 319 (C.A.A.F. 2011).

The question, instead, is whether now, having had the opportunity to confront her with these matters, the accused is constitutionally entitled to present extrinsic evidence for the sole purpose of contradicting statements he himself elicited or insisted upon admitting. We conclude that under the proper legal framework for impeachment by contradiction, the answer is a clear no and that the military judge's ruling to the contrary is erroneous as a matter of law and violative of protections afforded Petitioner by M.R.E. 412.

First, the military judge clearly erred by concluding the evidence proffered by the Defense is not collateral. The military judge noted the importance of Petitioner's credibility and that the evidence is material to her credibility, but that does not complete the analysis. Credibility of a witness is always material. *Ellerbrock*, 70 M.J. at 319. But for a matter to be non-collateral under the impeachment by contradiction doctrine, it must be material *independent of its tendency to contradict a statement*. *Langhorne*, 77 M.J. at 555; *see also*, *Ellerbrock*, 70 M.J. at 320 (holding that because evidence tending to show motive to fabricate was itself "a substantial issue in question," it was constitutionally required).

In effect, the military judge's ruling renders whether Petitioner engaged in sexual activity with anyone in the two years before the alleged assault and whether she ever engaged in sexual activity with a shipmate as non-collateral matters that can now be litigated with extrinsic evidence. This is clearly wrong. The only relevance of such evidence is its tendency to contradict Petitioner's statements. Independent of that, SN G.C.'s testimony is wholly disconnected from the charged misconduct, flatly inadmissible, and contrary to the text and purpose of M.R.E. 412. The evidence is, therefore, collateral.

Because this sexual history is a collateral matter, the accused may only present extrinsic evidence of it if Petitioner raised it during *direct examination*. *Banker*, 15 M.J. at 210. Petitioner, however, did not testify during direct examination that she had not engaged in sexual activity in a given amount of time, nor that she did not engage in sexual relations with shipmates; nor did she create any other factual inference opening the door to rebuttal. The Defense, in effect, wishes to open its own door, then exploit it to present otherwise irrelevant extrinsic evidence of Petitioner's sexual history. Nothing in the Constitution requires such a misuse of the doctrine of impeachment by contradiction.

It is true that one of Petitioner's two statements—that she does not "do that" with her shipmates—was contained in a prosecution exhibit. But for two reasons, we conclude that this did not open the door to extrinsic evidence. First, it was the accused who insisted that this statement be included in the exhibit. The Government, therefore, was not responsible for creating any potential factual inference—it was the Defense who desired that statement to be included. Second, unlike *Dominguez*, the exhibit is not a substitute for direct testimony by Petitioner. In *Dominguez*, the out-of-court statement was admitted for the truth of the matters asserted *by the witness* under the residual hearsay exception. *Dominguez*, 81 M.J. at 809. Here, in contrast, the transcript was offered as an admission *by the accused* as a party-opponent under M.R.E. 801(d)(2). Petitioner's statements remain hearsay and are not offered for the truth of the matter asserted. In other words, her statements in her recorded phone conversation with the accused may provide context and effect on the listener, but they do not open the door to a mini-trial about whether, in fact, she has ever engaged in sexual activity with shipmates.

6

We must also address the military judge's suggestion that the Defense may be able to simply recall Petitioner to the stand and elicit the same statement during its direct examination. This, too, evinces a misapplication of the doctrine of impeachment by contradiction. It is true that a party can impeach its own witness. M.R.E. 607. But nothing in the doctrine of impeachment by contradiction allows the same party to invite a broad, collateral statement, then to present extrinsic evidence to impeach the factual inference that it has created. *See United States v. Banks,* 36 M.J. 150, 166 (C.M.A.1992) ("It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party. The scope of rebuttal is defined by evidence introduced by the other party.") (cleaned up).

The Defense has been given the opportunity to cross-examine Petitioner about the alleged falsity of her statements to investigators and to the accused. But having chosen to examine her about collateral matters, the Defense now must "take the answer, i.e., the examiner may not disprove it by extrinsic evidence." *Beauchamp*, 986 F.2d at 3. Just as this rule did not violate the constitutional rights of the defendants in *Beauchamp* and *Bitterman*, 320 F.3d at 727, nor does it violate the accused's.

To place this within the balancing test articulated in *Gaddis*, 70 M.J.at 255, the probative value of evidence of an alleged sexual liaison months before the charged misconduct does not outweigh countervailing issues. The evidence has no independent legal or logical relevance to the charged offenses. To the extent that having intercourse months prior would affect a woman's ability to feel like she had been vaginally penetrated while she was asleep—which is beyond tenuous—the Defense removed this as an issue when it conceded in opening that the touching had occurred. The only relevance is the testimony's tendency to contradict Petitioner's statements—and as discussed, an accused does not have a constitutional right to present extrinsic evidence to contradict collateral statements to which he himself opened the door.

On the other side of the coin, the dangers of confusing the issues and unfair prejudice are significant. Petitioner denies having consensual sex with SN G.C.; this is not an uncontroverted matter. And there is a risk of confusing the issues. One of trial defense counsel's bases for seeking admission of the testimony was an attempt to draw similarities between Petitioner's encounter with SN G.C. and her encounter with the accused, demonstrating she had "made a similar 'bad memory' statement to SN G.C. about her consensual sexual encounter with him. . . ." Pet. Ex. E at 10. The military judge rejected this basis, but there is a danger that the members would use the evidence for just this purpose: to draw similarities between the two encounters and draw improper inferences from the testimony beyond its mere tendency to contradict Petitioner's statements.

Accordingly, we conclude the military judge clearly abused his discretion in ruling that evidence of Petitioner's otherwise-irrelevant sexual history is constitutionally required as impeachment by contradiction. We also conclude that Petitioner has shown the three prongs necessary to be entitled to extraordinary relief. First, granting this writ under Article 6b, UCMJ is the only adequate means for Petitioner to prevent a violation of her protections under M.R.E. 412. Second, Petitioner is, we conclude, clearly and indisputably entitled to relief. The harm that

would ensue from an erroneous application of the law is precisely the type that Article 6b and M.R.E. 412 seek to avoid. Finally, under the circumstances, we conclude that issuance of the writ is appropriate.

Accordingly, it is, by the Court, this 22nd day of November, 2022,

ORDERED:

That the petition for a writ of mandamus is granted.

That the military judge's ruling that the testimony of SN G.C. is admissible is reversed.

That the stay of proceedings ordered on 4 October 2022 is vacated. Proceedings may recommence consistent with this opinion.



For the Court,


Christopher R. Jaramillo
Acting Clerk of the Court

Copy:  Office of Military Justice
       Special Victims' Counsel
       Appellate Government Counsel
       Appellate Defense Counsel