# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Daniel A. GARCIA
### Fireman (E-3), U.S. Coast Guard

## CGCMG 0258

## Docket No.  1317

## 3 June 2010

General Court-Martial convened by Commander, Ninth Coast Guard District.  Tried at Traverse City, Michigan, on 17 June 2008 and 8-11 September 2008.

| | |
|---|---|
| Military Judge: | CAPT Gary E. Felicetti, USCG |
| Trial Counsel: | LCDR Ted R. Fowles, USCG |
| Assistant Trial Counsel: | LCDR Matthew W. Merriman, USCG |
| | LTJG Mario Fernandez, USCGR |
| Military Defense Counsel: | LT Nathaniel R. Gross, JAGC, USN |
| Appellate Defense Counsel: | CDR Necia L. Chambliss, USCGR |
| | LT Kelley L. Tiffany, USCGR |
| Appellate Government Counsel: | LT Emily P. Reuter, USCG |
| | CDR Stephen P. McCleary, USCG |

### BEFORE
### McCLELLAND, LODGE & CHANEY
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of members.  Contrary to his pleas, Appellant was convicted of one specification of aggravated sexual assault upon a substantially incapacitated person, in violation of Article 120, Uniform Code of Military Justice (UCMJ), and one specification of wrongfully furnishing alcohol to minors, in violation of Article 134, UCMJ.  The court sentenced Appellant to confinement for twenty-four months, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.  The Convening Authority approved the sentence as adjudged.

**United States v. Daniel A. GARCIA, No. 1317 (C.G.Ct.Crim.App. 2010)**

Before this court, Appellant has assigned the following errors:

I.        The military judge erred in denying Appellant's motion to dismiss Charge I, as Article 120 is unconstitutional.

II.       The military judge erred when he denied the defense motion to exclude Prosecution Exhibit 3, a videotape of the police interrogation of Appellant, when no Article 31(b) rights were given.

III.      The Convening Authority abused his discretion in preventing the recording of the Article 32 investigation, resulting in a violation of Appellant's Fifth and Sixth Amendment rights.

IV.      The promulgating order and the SJAR incorrectly state the offenses with which Appellant was charged and convicted.

V.       The military judge erred when he failed to suppress prejudicial text messages in violation of RCM 402 and RCM 403.

We heard oral argument on the second issue on 2 March 2010 at Howard University School of Law as part of Project Outreach.[1]

We summarily reject the fifth issue, since we find the text messages at issue inconsequential and certainly not plain error. We discuss the other issues; we find no error and affirm.

### Facts

On the evening of Friday, 4 January 2008, Appellant hosted a party at his home that was attended by, among others, female high school students MK and KRK. Appellant provided alcoholic beverages at the party, specifically to MK and KRK. KRK became drunk and went to sleep on the floor of Appellant's bedroom. In the early hours of the morning, KRK awoke to find Appellant having sex with her. She immediately left and drove home.

---

[1] Project Outreach is a program instituted by the United States Court of Appeals for the Armed Forces to expand awareness of the military justice appellate process by taking appellate hearings to the service academies, law schools, and other locations. Oral argument in this case was heard before students and faculty members at Howard University School of Law. After the hearing adjourned, in furtherance of Project Outreach objectives, the judges and appellate counsel entertained questions from the audience not pertaining to this case or its issues.

On 9 January, the local police began an investigation of the incident, with two officers interviewing KRK.[2] On the same day, Appellant's command requested Coast Guard Investigative Service (CGIS) to investigate. The next day, a CGIS agent arrived to investigate. The CGIS agent and a police officer made contact with one another and agreed to cooperate in their investigations of the incident. This was largely a matter of convenience for the investigators and for witnesses who would only have to be interviewed once. Each investigator remained in control of his own investigation and did not receive or give direction from or to the other. Each was going to investigate the incident regardless of the intentions of the other. Each produced a report. The police report was submitted to the county prosecutor, and the CGIS report was submitted to Appellant's command.

On 11 January, the CGIS agent and a police officer approached Appellant at his duty station and requested his participation in a police interview. Appellant agreed, and they drove him to the police station. The interview was conducted by two police officers; the CGIS agent did not participate or observe, and did not consult with or assist the police officers in planning the interview. The police officers explained to Appellant that they did not want the CGIS agent in the room making Appellant think he was being forced to cooperate. They reminded him that they were not forcing him to come to the station and he was not required to talk with them. After a long narrative from Appellant about the incident, he was read a *Miranda* warning before focused questions were asked. Appellant agreed to continue the interview without a lawyer present. After the interview, one of the police officers told the CGIS agent in passing that Appellant did not remember much about the incident due to a claimed blackout.

Most other witness interviews, but not all, were conducted jointly with both the CGIS agent and a police officer present. The police re-interviewed KRK; the CGIS agent observed this interview but did not participate in it. The CGIS agent did not interview KRK.

The CGIS agent interviewed Appellant on 28 January at his duty station with no one else present. He advised Appellant of his Article 31(b) rights and included the advice that any prior

---

[2] This and the following three paragraphs are paraphrased from the military judge's findings of fact, Appellate Exhibit XIX, for the defense's suppression motion. We find that these facts are not clearly erroneous.

statement made without an appropriate rights advisement could not be used against Appellant in a court-martial. Appellant waived his rights and answered questions, but declined to provide a written statement. The CGIS agent did not specifically mention the prior police interview. It was only after this interview that the CGIS agent viewed a video of the police interview with Appellant.

After preferral of charges against Appellant and ordering of an Article 32, UCMJ investigation, the defense on 3 April 2008 requested that the government record and transcribe the Article 32 testimony, or, in the alternative, that the defense be permitted to record the proceedings. The request was denied on 8 April. The defense requested reconsideration on 9 April. The request was denied on 11 April, with the proviso that the defense was permitted to record the proceedings under the following conditions:

> a. The Defense agrees to produce a professional, verbatim transcript of the entire hearing from recordings made by a certified civilian court reporter or trained and qualified U.S. Navy court reporter. The quality level of the recordings and verbatim transcript must be equal to standards adhered to by civilian court reporters. The Defense agrees to bear all expenses related to the recording and transcription.
>
> b. The Defense agrees to submit the name and proof of qualifications of the court-reporter to the Article 32 Convening Authority at least five days before the Article 32 investigation.
>
> c. The Defense agrees to provide a copy of the verbatim transcript to the Article 32 Investigating Officer, at Defense expense, within three weeks of the conclusion of the Article 32 investigation.
>
> d. The Defense agrees that the time required to produce and deliver the verbatim transcript will be considered excludable delay in according with R.C.M. 707(c).

The denial document encouraged a request for an assistant defense counsel if deemed justified.

The Defense then sought extraordinary relief from this Court, requesting an order to detail a reporter to the Article 32 investigation or an order prohibiting the government from interfering with defense recording or requiring a transcript. (Appellate Ex. XV encl. 9.) Relief was denied. (Appellate Ex. XV encl. 10.) Likewise, the Court of Appeals for the Armed Forces denied relief. 66 M.J. 377 (C.A.A.F. 2008).

The Article 32 investigation took place on 5 May 2008 and was not recorded. The defense did not seek the detailing of an assistant defense counsel from the detailing authority. [3]

On 3 June 2008, the defense submitted a motion to reopen the Article 32 investigation so that testimony of witnesses could be recorded, and a motion to suppress the police interrogation, among other things. Appellant was arraigned on 17 June 2008, and the motions were heard at that session. The military judge denied the motion to reopen the Article 32 investigation in a written ruling. (Appellate Ex. XVIII.) He also denied the motion to suppress the police interrogation in a written ruling. (Appellate Ex. XIX.)

## Article 120

Appellant argues that Article 120, UCMJ, is unconstitutional because it shifts the burden of proof of an element of the offense to Appellant. He further argues that the statute creates a logical impossibility, and the military judge's attempt to remedy this problem by his instructions was impermissible.

The issue of a burden shift and the so-called logical impossibility arise from subsections (r) and (t)(16) of Article 120. Subsection (r) reads in pertinent part, "Consent and mistake of fact as to consent are not an issue, or an affirmative defense, . . . except they are an affirmative defense for the sexual conduct in issue in a prosecution under subsection (a) (rape), subsection (c) (aggravated sexual assault), subsection (e) (aggravated sexual contact), and subsection (h) (abusive sexual contact)." Subsection (t) provides that an accused "has the burden of proving the affirmative defense by a preponderance of evidence. After the defense meets this burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the affirmative defense did not exist."

Since Appellant's brief was filed, the Court of Appeals for the Armed Forces (CAAF) has decided *United States v. Neal*, 68 M.J. 289 (C.A.A.F. 2010), in which the same issue was

---

[3] The foregoing facts concerning the issue of recording the Article 32 investigation are paraphrased from the military judge's findings of fact in Appellate Exhibit XVIII. We find that these facts are not clearly erroneous.

raised. In *Neal*, CAAF held that the statute was not unconstitutional, and also noted that "the military judge has the authority to craft an appropriate instruction ensuring that the burden of proof remains with the government." *Id.* at 304.

The specification at issue in *Neal* involved sexual contact by force under Article 120(e). Force means "action to compel submission of another or to overcome or prevent another's resistance" by various means. Art. 120(t)(5), UCMJ. CAAF acknowledged the "possibility that evidence pertinent to the affirmative defense of consent could raise a reasonable doubt about the element of force in a particular case" and specifically held that this did not render the statute unconstitutional. *Id.* at 303.

In our case, the specification at issue alleges that Appellant engaged in a sexual act with KRK "while she was substantially incapacitated," which would violate Article 120(c). Paragraph (t)(14) of Article 120 provides in pertinent part that a person cannot consent to sexual activity if substantially incapable of (i) appraising the nature of the sexual conduct due to mental impairment or unconsciousness or mental disease or defect, (ii) physically declining participation in the sexual conduct, or (iii) physically communicating unwillingness to engage in the sexual conduct.

In the *Neal* case, involving force, there was a possibility that evidence pertinent to consent could raise a reasonable doubt about the element of force. In this case, involving incapacitation, proof of the element of incapacitation surely requires evidence that would tend to negate the possibility of consent, by the terms of paragraph (t)(14). Conversely, evidence pertinent to consent not only could lead to the affirmative defense provided for in subsection (r), but would also tend to undermine proof of, and raise a reasonable doubt about, the element of incapacitation, just as is the case for the element of force in *Neal*. We therefore follow CAAF's lead with confidence, reject Appellant's argument, and hold that Article 120 in the context of this case is not unconstitutional. The military judge did not err in denying Appellant's motion to dismiss Charge I. Furthermore, the military judge's instructions (R. at 635) that eliminated the "logical impossibility" were appropriate.

**Admissibility of Police Interrogation**

Appellant argues that the police and CGIS investigations had merged, and that therefore the police interview was inadmissible because Article 31(b) warnings did not precede it.

> Our cases identify at least two situations in which Article 31 extends to the civilian investigator. These are: (1) When the scope and character of the cooperative efforts demonstrate "that the two investigations merged into an indivisible entity," *United States v. Swift*, 17 USCMA 227, 232, 38 C.M.R. 25; and (2) when the civilian investigator acts "in furtherance of any military investigation, or in any sense as an instrument of the military," *United States v. Grisham*, 4 USCMA 694, 697, 16 C.M.R. 268; *United States v. Aau*, 12 USCMA 332, 30 C.M.R. 332; *cf. United States v. Holder*, 10 USCMA 448, 28 C.M.R. 14.

*United States v. Penn*, 18 USCMA 194, 199, 39 C.M.R. 194, 199 (1969). More than a cooperative relationship between civilian and military authorities is required before civilian authorities will be subject to Article 31(b). *United States v. Payne*, 47 M.J. 37, 43 (C.A.A.F. 1997); *see United States v. Lonetree*, 35 M.J. 396, 404-05 (C.M.A. 1992).

It cannot be seriously contended that the local police were in any sense an instrument of the Coast Guard, and Appellant does not so argue. But Appellant does argue that the two investigations had merged.

Appellant makes much of the fact that the CGIS agent did not interview KRK, the complaining witness. He asserts that the only reasonable explanation for this is that the two investigations had merged, and the CGIS agent relied upon the police interviews. In our view, the CGIS agent's decision to use available resources (the police interviews of KRK) and refrain from interviewing KRK himself is far from a demonstration that the investigations had merged. It is merely another instance of cooperation, and is readily explained by a common reluctance to subject a victim to multiple interviews.

Appellant cites *Lonetree* for the principle that the purpose of the two investigations and whether they act independently are the determining factors, and goes on to argue that both investigations were law enforcement investigations focused on the same conduct and offenses. In our view, Appellant misreads *Lonetree*. The court in *Lonetree* does not say these are the

determining factors, but approvingly quotes the lower court as observing that military courts consider the purpose of each of the two investigations and whether they act independently. *Id.* at 404. That the civilian investigation in *Lonetree* had a distinct purpose other than perfecting a criminal prosecution and that it was conducted entirely separately from any military activities were surely important in ruling out merger in that case. One might say that they made *Lonetree* an easy call. That does not mean that those factors are necessary to a finding of no merger. In any event, the fact that both investigations in our case had a law enforcement purpose does not mean that their purposes were the same in a critical sense. Each had its own audience in mind.

Concerning the independence of the two investigations, the court in *Lonetree* performed a detailed analysis of the relationship between the two. In that case, the civilian investigators did not coordinate their activities with the military authorities; they stayed within their own communication channels; they did not seek guidance from the military at any time; the two investigations did not begin as a coordinated effort; the civilians were not influenced by the military, nor did the military attempt to advise or instruct them. *Id.* In our case, it is fair to say that after they had made contact, the civilian and military investigators did coordinate their activities, so that the two investigations coincided for several witness interviews, but as to each of the other listed considerations, there is no indication that our case is different from *Lonetree*. In short, there is no significant basis for questioning the independence of the two investigations.

Reviewing his conclusion *de novo*, we agree with the military judge that the two investigations did not merge. We see nothing more than cooperation between the two investigations. Considering the merger test set forth in *Penn* -- whether the scope and character of the cooperative efforts demonstrate that the two investigations merged into an indivisible entity -- we conclude that they did not merge into an indivisible entity. Aside from CGIS's liaison function of escorting a police officer to Appellant's duty station and accompanying him in requesting Appellant's participation in a police interview, the cooperative efforts consisted of joint interviews of witnesses and exchanges of information; the investigations remained readily divisible. The military judge did not err in admitting the videotape of the police interview.

**Recording Article 32 Investigation**

Appellant argues that denial of his request to record the Article 32 proceedings violated his Fifth and Sixth Amendment rights. He makes clear that the primary defense interest in the issue is the preservation of witness testimony, so as to impeach a witness who testifies inconsistently during the court-martial compared to that witness's Article 32 testimony. Appellant also argues that the government's failure to order the proceedings to be recorded was an abuse of discretion because the case was unusual and complex. The Coast Guard Military Justice Manual, COMDTINST M5810.1D, provides at paragraph 3.F.4., "A reporter will not be detailed to an investigation under Article 32, UCMJ unless the OEGCMJ [officer exercising general court-martial jurisdiction] over the accused so authorizes in unusual or complex cases."

We review the military judge's denial of the motion to reopen the Article 32 investigation for abuse of discretion.

In *United States v. Elijah Garcia*, 68 M.J. 561 (C.G.Ct.Crim.App. 2009), we held that there is no Constitutional violation in denying a defense request to record an Article 32 investigation. We adhere to that holding in this case. We now consider whether the military judge abused his discretion in any other respect on this issue.

The military judge considered Appellant's argument that the case was unusual and complex. Assuming that the Coast Guard Military Justice Manual provision quoted above requires a reporter to be detailed for an unusual or complex case, the military judge found the case neither unusual nor complex, and we agree.

The military judge also considered the argument that the government had no authority to impose conditions on a defense recording of the Article 32 investigation. He rejected that argument, and also rejected the notion that the conditions conflicted with the Rules for Courts-Martial. He went on to discuss the reasonableness of the conditions. It is here, if anywhere, that an abuse of discretion, by the government or by the military judge, might be found.

The government required that a qualified court reporter be employed, and that proof of qualification be provided. If a transcript was contemplated, this was surely a reasonable condition.

This begs the question: was it reasonable to require that a transcript be produced? The military judge commented that "requiring a transcript be produced rather than waiting for the defense counsel to determine that one is required serves the interest of efficiency. The need for the transcript may not become apparent until trial testimony reveals an inconsistency. Halting the court-martial to produce a transcript at that point would be extremely inefficient and disruptive." (Appellate Ex. XVIII at 5, fn 4.) The government makes the same argument before us. We find the rationale flawed. The existence of a recording does not, of itself, require a transcript or justify delay while a transcript is produced.[4]

The use of a witness's Article 32 testimony to impeach the witness at trial would typically involve asking the witness, during cross-examination, about testimony given by the witness at the Article 32 investigation that was inconsistent with the witness's direct testimony at trial. Counsel would also be able to introduce the prior inconsistent testimony under Military Rule of Evidence (M.R.E.) 801(d)(1), Manual for Courts-Martial, United States (2008 ed.). This could be done by testimony of a person who attended the Article 32 investigation. As we noted in *Garcia*, "The lack of a [transcript] for either the cross-examination or for the introduction of the prior testimony may be less than ideal, but Appellant does not have a right to the ideal." *Id.* at 563 (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

Accordingly, to the extent that the military judge's denial of the motion depended on an assumption that a transcript must be produced if defense counsel saw a need for it, we are inclined to view the denial as an abuse of discretion.

---

[4] When the government denied the defense's initial request to be allowed to tape-record the proceedings, its rationale for the denial was that "a non-professional recording poses the threat of an incomplete and/or inaudible tape of the proceedings. A 'private' tape recording is not reliable and is likely to create more issues than it resolves. … Equally important, there should be only one official record of the investigation – the investigating officer's report. An 'unofficial' recording should not be made by someone who will not be able to dedicate themselves to making a verbatim record." (Appellate Ex. XV encl. 4.) This rationale is equally flawed. The existence of a recording does not mandate that it be given any recognition by a court or a convening authority.

However, the military judge also pointed out that the alleged victim had made false statements to the police about the incident and there were other "significant grounds on which to cross-examine" her. (Appellate Ex. XVIII at 3.) He also noted as to other witnesses, "the proposed remedy does not really cure the problem. It is impossible to record the earlier testimony now." (Appellate Ex. XVIII at 7.) "Consequently, I find that ordering a new Article 32 hearing to mostly repeat prior testimony and therefore preserve it for potential impeachment at trial would be an unnecessary waste of time, money, and resources." (*Id*.) These other grounds for his ruling are unexceptionable.

Concerning the victim, KRK, and the "significant grounds on which to cross-examine her," the defense did cross-examine her exhaustively, as the Government notes, both on her prior false statements to the police and on her inconsistent testimony at the Article 32 hearing. (R. at 521-62.) KRK's testimony and the video recording of the police interview were by far the most important evidence against Appellant; the other witnesses' testimony was largely peripheral to the offenses, or, in the case of the CGIS agent, cumulative with the video recording. Appellant has not pointed out any individual witness from whose testimony the absence of recording might have resulted in prejudice, and we see none.

In short, if the military judge had granted the motion to re-open the Article 32 investigation, we are certain that Appellant would not have gained anything more useful than what he already had. Thus, if the military judge abused his discretion in his denial of the motion, that error was harmless beyond a reasonable doubt.

### Error in Promulgating Order and SJAR

Appellant complains that the SJAR and the Promulgating Order incorrectly list his conviction for aggravated sexual assault as having been charged under Article 121 instead of Article 120. We find no prejudice from these errors. However, the promulgating order must be corrected.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed. The record of trial shall be returned to the Convening Authority, who shall issue a new promulgating order free of errors.

Judges LODGE and CHANEY concur.

For the Court,



Gail M. Reese
Clerk of the Court