# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### James D. FINK
#### Fireman (E-3), U.S. Coast Guard

#### CGCMG 0398
#### Docket No. 1502

#### 26 November 2025

General court-martial sentence adjudged on 23 August 2023.

| | |
|---|---|
| Military Judge: | CDR Timothy N. Cronin, USCG |
| Civilian Defense Counsel: | Mr. Scott Hockenberry, Esq. |
| Appellate Defense Counsel: | LCDR Thadeus J. Pope, USCG |
| Appellate Government Counsel: | Mr. John P. Nolan, Esq. |
| | LCDR Elizabeth M. Ulan, USCG |
| | LT Christopher J. Hamersky, USCG |
| Special Victims' Counsel: | Mr. Paul T. Markland, Esq. |

#### BEFORE
#### McCLELLAND, BRUBAKER & TASIKAS
Appellate Military Judges

BRUBAKER, Judge:

This is the second time this case has come before us. As the case was being tried at a general court-martial, the complainant filed a petition with us seeking a writ of mandamus under Article 6b, Uniform Code of Military Justice (UCMJ). *In re Y.B.*, 83 M.J. 501, 503 (C.G. Ct. Crim. App. 2022). We stayed the proceedings and ultimately granted the writ, holding that, contrary to the military judge's ruling, certain evidence was inadmissible under Mil. R. Evid. 412. *Id*. at 508. The United States Court of Appeals for the Armed Forces (CAAF) granted Appellant's writ-appeal petition, held that it had jurisdiction to review the petition, but declined to do so at that time without prejudice to Appellant's right to raise the issues in the ordinary course of appellate review. *Fink v. Y.B.*, 83 M.J. 222, 225 (C.A.A.F. 2023).

Subsequently, a general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of sexual assault, in violation of Article 120, UCMJ. Appellant was sentenced to confinement for thirty days, reduction to E-1, and a dishonorable discharge. Judgment was entered accordingly.

Appellant now raises eleven issues:

(1)     Can an interlocutory appeal under Article 6b(e)(1), UCMJ, be used to review a military judge's downstream evidentiary rulings based on evidentiary rules beyond those listed in Article 6b(e)(4), UCMJ?

(2)     Did this Court err in granting the interlocutory writ of mandamus?

(3)     Were civilian law enforcement required to provide Appellant with Article 31(b) warnings where they were working in conjunction with military law enforcement?

(4)     Were civilian law enforcement required to provide Appellant with Article 31(b) warnings because one of the interrogators was a person subject to the Code as a military retiree?

(5)     Are the provisions of Mil. R. Evid. 317 triggered when military law enforcement participates in the interception of wire or oral communications along with civilian law enforcement?

(6)     Is relief warranted where the mandatory Mil. R. Evid. 304(g) "weight of the evidence" instruction was omitted following the denial of the suppression motion?

(7)     Is relief warranted where the military judge gave an erroneous prior inconsistent statement instruction and failed to give the correct instruction?

(8)     Where the members circled "not guilty" to Charge I and its specification on the findings worksheet, then crossed it off and circled "guilty" instead, indicating either (1) they originally voted not guilty but then engaged in reconsideration without following the proper procedures or (2) an administrative mistake was made on the findings worksheet, did Mil. R. Evid. 606(b)'s 2013 amendment, allowing inquiry into whether "a mistake was made in entering the findings or sentence on the findings or sentence forms," permit inquiry into whether the circling of "not guilty" resulted from a mistake as opposed to an initial vote to acquit?

(9)     When two members who were enlisted at empanelment were promoted to warrant officer during the pendency of the trial, did the military judge err by improperly advising Appellant of his forum selection options and/or by excusing the two members over Defense objection?

(10) Is the evidence legally and factually insufficient?

(11) Did trial counsel make improper argument that warrants relief?

We resolve issues 10 and 11 summarily. Regarding issue 10, we conclude that the evidence supporting Appellant's conviction is legally and factually sufficient. *See* Article 66(d), UCMJ; *United States v. Casillas*, ___ M.J. ___, No. 24-0089, 2025 WL 2446502, at *5 (C.A.A.F. Aug. 20, 2025); *United States v. Harvey*, 85 M.J. 127, 130–31 (C.A.A.F. 2024). Regarding issue 11, we conclude that Appellant forfeited his objection to trial counsel's argument by failing to object at trial and fails now to establish plain and prejudicial error. *See United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). We discuss the remaining issues, but we conclude there is no prejudicial error and affirm.

**Background**

Appellant and then-Seaman (SN) Y.B. were both members of the same unit. One evening, Appellant's roommate invited several members of the unit to a get-together at their home. As guests ate food and played video games, Appellant and SN Y.B. mostly socialized with each other; Appellant had a gaming computer in his bedroom, which interested her. Unlike most of the guests, both were of legal drinking age, and at one point, they left to obtain alcohol, returned, and resumed socializing while drinking alcohol. As many guests were leaving, Appellant asked her if she wanted to stay overnight. She agreed. As she waited on his bed for him to return so they could play on his computer, she fell asleep. She awoke to find herself naked from the waist down and him standing nearby, naked from the waist down. She immediately dressed and went home.

Hours later, she reported a sexual assault. The Coast Guard Investigative Service (CGIS) opened an investigation and notified the local police department, which was standard protocol for an off-base incident. The following day, a CGIS special agent and a detective from the Fairfax County Police Department (FCPD) interviewed SN Y.B. At the end of the interview, the detective asked her to participate in a controlled call with Appellant, in which she would ask him questions about the incident while the call was being recorded. She agreed, and the call occurred,

during which Appellant admitted to digitally penetrating her vagina. A recording and transcript of the call were admitted at trial.

The next day, two FCPD detectives interviewed Appellant at his Coast Guard unit. They received assistance in setting up the interview from the CGIS special agent, but the agent did not attend the interview. The detectives informed Appellant he was not required to speak with them, but they did not provide any *Miranda*[1] or Article 31(b), UCMJ, warnings. During the interview, Appellant admitted to digitally penetrating SN Y.B.'s vagina while she was asleep. Immediately after the interview, before leaving the unit, the detectives gave a copy of the interview recording to the CGIS special agent. The recording and a transcript of the interview were admitted at trial.

FCPD later informed CGIS that there would not be a local prosecution. FCPD and CGIS each prepared a report concerning its investigation.

## Prior Interlocutory Decision

Appellant raises two issues regarding our grant of the interlocutory writ of mandamus in *In Re Y.B.*, 83 M.J. 501. First, he posits that it was improper for us to consider the military judge's ruling under Article 6b, UCMJ, because it was based not on his initial pretrial ruling under Mil. R. Evid. 412, but on a later "downstream" evidentiary ruling that certain testimony was admissible. Appellant's Br. at 72. Appellant asserts that the ruling made during trial was "governed by standard evidentiary rules" as opposed to the rules enumerated in Article 6b for which enforcement by this Court is available. *Id.* Second, he posits that, on the merits, we erred in granting the interlocutory writ of mandamus.

We disagree on both points and adhere to our prior decision. *See In Re Y.B.*, 83 M.J. 501. We take a moment, however, to discuss Appellant's first point about the scope of Article 6b.

Article 6b provides, inter alia, that if a victim of an offense under the UCMJ believes that a lower court's ruling violates rights afforded by enumerated articles or rules, he or she may

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

petition this Court for a writ of mandamus requiring the lower court to comply with the article or rule. Article 6b(e)(1), UCMJ. Among the delineated rules is "Military Rule of Evidence 412, relating to the admission of evidence regarding a victim's sexual background." Article 6b(e)(4), UCMJ.

Mil. R. Evid. 412 is a rule of exclusion. *United States v. Gaddis*, 70 M.J. 248, 251 (C.A.A.F. 2011). It provides that "[e]vidence offered to prove that a victim engaged in other sexual behavior" is inadmissible in any proceeding involving an alleged sexual offense unless one of its listed exceptions applies. Mil. R. Evid. 412(a). One of those exceptions is "evidence the exclusion of which would violate the accused's constitutional rights." Mil. R. Evid. 412(b)(3).

Here, though the military judge's "downstream" ruling relied upon his understanding of rules of evidence not enumerated in Article 6b, its effect was to admit evidence of "other sexual behavior." Mil. R. Evid. 412(a). In a pretrial ruling, he concluded that evidence that Y.B. allegedly had sexual relations with a fellow Coastguardsman was relevant for its tendency to contradict statements she had made to law enforcement that she had no sexual relations in the preceding two years. His ruling, however, only allowed cross-examination of Y.B. on the matter. He explicitly ruled that he would not allow extrinsic evidence on the matter unless Y.B. opened the door by making a broad claim during direct examination. Although Y.B. did not make any such broad claim during direct examination, after she testified, the military judge, for the first time, ruled that he *would* allow testimony on the matter as impeachment by contradiction.

Whatever evidentiary basis the military judge relied on, such testimony was plainly evidence of "other sexual behavior" barred by Mil. R. Evid. 412 unless one of its exceptions applied. Mil. R. Evid. 412(a). As relevant here, Y.B. was protected from having this testimony about her sexual background admitted at a court-martial unless its exclusion would violate Appellant's constitutional rights. *See* Mil. R. Evid. 412(b)(3). Because Y.B. believed that the military judge's ruling violated her protections under this rule, she was statutorily entitled to petition this Court for relief. Article 6b(e), UCMJ.

This does not change merely because the military judge premised his ruling on what we ultimately determined to be a misapplication of the doctrine of impeachment by contradiction. For evidence to be constitutionally required, it must, perforce, be admissible under "standard" rules of evidence. Here, we were required to determine whether the exclusion of testimony about alleged sexual activity with an unrelated person months prior to the charged conduct would violate Appellant's constitutional rights. It would not, we concluded, because Appellant was not constitutionally entitled to present what we determined was improper impeachment by contradiction.

To sum up, Appellant asks: can an interlocutory appeal under Article 6b(e)(4) be used to review a military judge's downstream evidentiary rulings based on evidentiary rules beyond those listed in Article 6b(e)(4)? We answer: yes—as long as that "downstream" ruling admits evidence of a crime victim's "other sexual behavior" that he or she believes violates her rights under Mil. R. Evid. 412. *See* Article 6b(e), UCMJ.

## Article 31(b)

Appellant asserts that the FCPD detectives, despite being civilian investigators, were required to read him his rights under Article 31(b), UCMJ, prior to questioning him because: (1) FCPD was working in conjunction with CGIS in a manner requiring warnings; and (2) one of the FCPD detectives was a military retiree.

### 1. Civilian Investigators Working in Conjunction with Military

Appellant moved to suppress his statements to FCPD on the basis that, at the time they interviewed Appellant, they were working in conjunction with CGIS to such an extent that the two investigations had merged and that FCPD was acting as an instrument of the Coast Guard. "We review a military judge's ruling on a motion to suppress for an abuse of discretion." *United States v. Metz*, 84 M.J. 421, 427 (C.A.A.F. 2024). A military judge abuses his discretion when he: (1) predicates his ruling on findings of fact that are not supported by the evidence of record; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) fails to consider important facts. *United States v. Tapp*, 85 M.J. 19, 26–27 (C.A.A.F. 2024).

By its terms, Article 31 prohibits persons *subject to the UCMJ* from requesting statements from those suspected of offenses without first informing them of the nature of the accusation and advising them that they do not have to make any statement about the suspected offense and that any statement made may be used as evidence in a later court-martial. Article 31(b), UCMJ. Thus, investigators with civilian law enforcement agencies are generally not required to provide Article 31(b) warnings. *United States v. Grisham*, 4 C.M.A. 694, 697, 16 C.M.R. 268, 271 (1954). However, when civilian investigators work in conjunction with military officials, they must provide Article 31(b) warnings if: (1) "the scope and character of the cooperative efforts demonstrate that the two investigations merged into an indivisible entity," or (2) "the civilian investigator acts in furtherance of any military investigation, or in any sense as an instrument of the military." *United States v. Brisbane*, 63 M.J. 106, 111 (C.A.A.F. 2006) (cleaned up); *see also* Mil. R. Evid. 305(b)(1) (defining a "person subject to the code" for purposes of Article 31(b) and Mil. R. Evid. 305(c) as including "a person acting as a knowing agent of a military unit or of a person subject to the code.").

In determining whether a civilian and a military investigation merged into an indivisible entity, courts have considered several factors, including: whether the civilian investigators coordinated their activities with the military authorities; whether they stayed within their own communication channels; whether they sought any guidance from the military; whether the two investigations began as a coordinated effort; whether the civilians were influenced by the military; and whether the military attempted to advise or instruct them. *United States v. Garcia*, 69 M.J. 658, 662 (C.G. Ct. Crim. App. 2010) (citing *United States v. Lonetree*, 35 M.J. 396, 404 (C.M.A. 1992)). "In determining whether a civilian investigator is acting as an instrument of the military, a key factor is the degree of control exercised by military authorities over the civilian investigator." *United States v. Payne*, 47 M.J. 37, 43 (C.A.A.F. 1997) (cleaned up).

Here, the military judge purported to find *as fact* that the FCPD and CGIS investigations had not merged into an indivisible entity and that FCPD was not acting as an instrument of the military. Appellant asserts this was a mischaracterization because such conclusions are not findings of fact—which are binding on us unless clearly erroneous—but rather conclusions of law, which we review de novo. *See Brisbane*, 63 M.J. at 110.

Appellant correctly notes that in *Garcia*, we reviewed a military judge's conclusion that two investigations had not merged de novo. *Garcia*, 69 M.J. at 663. We ultimately do so here as well, but we must first acknowledge ambiguity in the law regarding this point.

In *United States v. Payne*, CAAF noted, "In several earlier decisions, this Court has said that the question whether military and civilian 'investigations merged into an indivisible entity' is a question of fact." *United States v. Payne*, 47 M.J. 37, 42 (C.A.A.F. 1997) (quoting *United States v. Penn,* 18 C.M.A. 194, 199, 39 C.M.R. 194, 199 (1969); compiling cases). But the court went on to add, "There may be a question whether these earlier decisions treating the agency question as one of fact remain viable in light of subsequent amendments to the UCMJ, adoption of the Military Rules of Evidence, and recent Supreme Court cases announcing a *de novo* standard of appellate review for constitutional issues." *Payne*, 47 M.J. at 42. The court then bypassed the issue: "We need not decide, however, whether a *de novo* standard of review or a more deferential 'clearly-erroneous' standard applies in this case, because we would uphold the military judge's ruling under either standard." *Id*. at 42–43.

In 2002, CAAF acknowledged it had left this question open, but added, "Despite our recognition in *Payne* that changes in the legal landscape may necessitate a change in our standard of review, we need not decide at this time whether to apply a *de novo* standard of review or clearly erroneous standard because under either, we hold the military judge's ruling was correct." *United States v. Pinson*, 56 M.J. 489, 494 (C.A.A.F. 2002). No case since, to our knowledge, has directly revisited the question. But in cases since then, CAAF, at least arguably, seems to implicitly apply a de novo standard to military judges' ultimate conclusions on whether investigations had merged or whether civilian investigators were acting as an agent of the military, while applying a clearly-erroneous standard to factual findings undergirding such conclusions. *See, e.g.*, *Brisbane*, 63 M.J. at 111–12 (C.A.A.F. 2006); *United States v. Rodriguez*, 60 M.J. 239, 253 (C.A.A.F. 2004) ("Therefore, *we conclude* that SA Grabman was conducting a separate and independent ATF investigation when he questioned Appellant at the roadside and was not required to inform Appellant of his Article 31(b) rights." (emphasis added)).

Courts of Criminal Appeals have diverged on the question. *Compare United States v. Wetuski*, No. ACM 39485, 2019 WL 7166774, at *6 (A.F. Ct. Crim. App. Dec. 20, 2019) ("Whether military and civilian investigations merged into an indivisible entity is a question of fact.") (citing *Payne*, 47 M.J. at 42), *with United States v. Redd*, 67 M.J. 581, 586 (A. Ct. Crim. App. 2008) ("While we affirm a military judge's findings of fact unless they are clearly erroneous, we review a military judge's conclusions of law de novo. Contrary to the conclusions drawn by the military judge, we find the questioning conducted together by the civilian and military investigators in this case constituted a joint investigation and implicated appellant's Article 31 rights." (citation omitted)).

To further complicate matters, we do not view *Garcia* as our resolution of this issue. As noted, we applied a de novo standard: "Reviewing his conclusion *de novo,* we agree with the military judge that the two investigations did not merge." *Garcia*, 69 M.J. at 663. But while applying that standard in that case, we did not purport to resolve the conflict identified in *Payne* and *Pinson* or to hold this was the *required* standard. Under the version of Article 66, UCMJ, applicable at the time, this Court occasionally opted to apply a stricter standard in favor of the accused even when not required to do so. *See, e.g., United States v. Olean*, 56 M.J. 594, 599 (C.G. Ct. Crim. App. 2001) ("In light of the [mandate for a court of criminal appeals to use its judgment to determine, on the basis of the entire record, which findings and sentence should be approved], we have chosen not to apply the 'abuse of discretion' review standard and, instead, have assessed the judge's ruling *de novo.*") (citing *United States v. Cole,* 31 M.J. 270, 272 (C.M.A. 1990)).

All that is only to say that we view this as an unresolved issue. And we leave it so. Following the lead of our higher court, we conclude that we need not resolve it here because under either a de novo or clearly-erroneous standard, we hold the military judge's conclusions were correct.

The military judge issued detailed findings of fact. We conclude that only one is clearly erroneous: that an FCPD detective texted the CGIS lead agent the evening after his interview of Appellant and stated that "the case will not be going forward on the civilian side." App. Ex. 31 at

5. In fact, the record shows it was the CGIS lead agent who texted the FCPD detective, "So I'm going to make Victim's [counsel] aware that the case will not be going forward on the civilian side but will continue through the UCMJ. I just don't want her caught off guard when you go tell her Wednesday." App. Ex. 38 at 5. This plainly references some earlier conversation where FCPD informed CGIS that it did not intend to go forward on the case.

The remainder of the military judge's findings of fact are not clearly erroneous and support that despite their coordination, FCPD and CGIS each had its own investigation that had not merged into an indivisible entity and that FCPD was not acting as an instrument of the Coast Guard in any sense when it interviewed Appellant.

Considering the factors articulated in *Garcia*, 69 M.J. at 662, we first note that two of them cut against this conclusion: civilian and military investigators coordinated their activities closely and the investigations began as a coordinated effort. Shortly after being apprised that a crime had allegedly occurred in Fairfax County, CGIS informed FCPD. They interviewed the complainant together. Then, under FCPD's leadership, the complainant made a controlled call to Appellant, while the CGIS special agent observed and participated by providing handwritten notes to the FCPD detective. CGIS and Appellant's command facilitated making Appellant available for FCPD to interview him and the command not only provided a conference room, but Appellant waited for FCPD in the commanding officer's office. The commanding officer personally escorted Appellant to the conference room once FCPD had arrived and testified that although he did not specifically remember, he may have stated on the way that Appellant was going to be asked questions and to "be honest." App. Ex. 31 at 10. Immediately following the interview, FCPD provided CGIS with a copy of the recording. And, after informing CGIS that Fairfax County did not intend to pursue the case further, FCPD continued to assist by taking a DNA sample from Appellant and having it tested at a Commonwealth lab.

Still, "[m]ore than a cooperative relationship between civilian and military authorities is required before civilian authorities will be subject to Article 31(b)," *Garcia*, 69 M.J. at 662 (citing *Payne,* 47 M.J. at 43), and the totality of the circumstances demonstrates that, at the time of Appellant's interview, the CGIS and FCPD investigations had not merged into an indivisible

entity and the FCPD detectives were not acting as instruments of the Coast Guard. First, the notification to FCPD was standard procedure: "CGIS typically notifies local law enforcement when the alleged assault occurs within a civilian law enforcement agency's jurisdiction." App. Ex. 31 at 2. As the military judge noted, both CGIS and FCPD separately opened investigations and testified they would have continued investigating regardless of the other agency's action.

Second, FCPD took the lead investigatory role, and it was their decision to attempt a controlled call between SN Y.B. and Appellant and to interview Appellant at the time they did. They used their own equipment for both and maintained their own communication channels. There is no indication that FCPD sought or received guidance or input from the military about how to interview Appellant. The record supports, to the contrary, that the FCPD detectives interviewed Appellant when and how they chose without military authorities exercising any degree of control over them.

Third, assuming Appellant's commanding officer told him to "be honest" with FCPD, that, as the military judge acknowledged, demonstrates further coordination between the military and FCPD and is concerning,[2] but the FCPD detectives were careful to emphasize to Appellant their status as civilian law enforcement, separate and apart from the military, and that they could not order Appellant to be present.

Fourth, and importantly, the military judge found that "CGIS did not avoid participating in the accused's interview to avoid having to read the accused his Article 31(b) rights." App. Ex. 31 at 5. This finding is not clearly erroneous.

Finally, even assuming that at the time that FCPD collected a DNA sample, it was acting as an instrument of the Coast Guard, that happened after Fairfax County decided not to pursue the case and does not rebut that at the time of the *interview*, which took place prior to that decision, FCPD was not acting on behalf of the Coast Guard.

---

[2] Such admonitions could, under the right circumstances, impact the voluntariness of a confession. *See United States v. Patterson*, No. 202200262, 2024 WL 1453792, at *8 (N-M. Ct. Crim. App. Apr. 4, 2024). But here, Appellant raises this only in support of his argument that Article 31(b) warnings were required. He does not assert, nor do we find, that his statement to FCPD was involuntary.

In sum, considering all the circumstances, we conclude that at the time of FCPD's interview of Appellant, CGIS and FCPD were, despite close coordination, conducting their own separate investigations that had not merged into an indivisible entity and FCPD was not acting in any sense as an instrument of the Coast Guard. Accordingly, the military judge did not abuse his discretion by denying Appellant's motion to suppress.

## 2. *Whether Warnings Required Due to Status as Military Retiree*

While attempting to engage Appellant in conversation prior to questioning him, the first FCPD detective said of the second, "Yeah, Les here was in the Air Force"; the second detective responded, "Yeah, I'm retired Air Force." Pros. Ex. 8 at 2. Based on this alone, and for the first time on appeal, Appellant asserts that due to the second detective's status, FCPD was required to advise Appellant of his rights under Article 31(b), UCMJ, prior to questioning. Appellant's Br. at 40–41 (citing Articles 2(a)(4), 31(b), UCMJ ("[P]ersons subject to this chapter" include "[r]etired members of a regular component of the armed forces who are entitled to pay."; "No person subject to this chapter may interrogate, or request any statement from . . . ."); Mil. R. Evid. 305).

Appellant waived this objection. He did not object on this basis at trial and, as a consequence, the record was not fully developed. Failure to timely move to suppress or object to a statement purportedly obtained in violation of Article 31 "constitutes a *waiver* of the objection"—not merely forfeiture. Mil. R. Evid. 304(f)(1) (emphasis added); *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017); *see also United States v. Harborth*, ___ M.J. ___, No. 24-0124, 2025 WL 1607400, at *4 (C.A.A.F. June 3, 2025) ("Allowing Appellant to assert this argument for the first time on appeal frustrates the purpose of the 'particularized objection' requirement as it prevents the Government from 'present[ing] relevant evidence on the objection' at trial.") (quoting *United States v. Bavender*, 80 M.J. 433, 436 (C.A.A.F. 2021)).

Appellant argues, in the alternative, that any failure to preserve this objection constituted ineffective assistance of counsel. To prevail on such a claim, Appellant must demonstrate: (1) that his counsel's performance was deficient; and (2) that this deficiency caused prejudice. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024). "When a claim of ineffective

assistance of counsel is premised on counsel's failure to make a motion, an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *Id*. at 289 (cleaned up).

We recognize the syllogistic appeal of Appellant's argument—Article 31(b) requires all persons subject to the Code to provide warnings before questioning; the civilian detective was, as a military retiree, subject to the Code; therefore, warnings were required. Military courts have, however, long "eschew[ed] a literal application of Article 31(b)" and have instead "looked to the purposes behind the article to inform its contextual application." *United States v. Gilbreath*, 74 M.J. 11, 15–16 (C.A.A.F. 2014). No military court has held that a member of a civilian law enforcement agency must provide Article 31(b) warnings if it turns out that he or she is a military retiree; to the contrary, the only military court that to our knowledge has addressed this question concluded the opposite. *United States v. Pearson*, 81 M.J. 592, 603–04 (N-M. Ct. Crim. App. 2021) (holding that Article 31(b) warnings were not required despite the civilian police officer being a retired servicemember).

Under these circumstances, Appellant fails to demonstrate that his counsel's performance was deficient. Even to the extent that his literal-reading interpretation "is arguable, it has not been *established* such that a failure to make the argument constitutes ineffective assistance." *United States v. Beauge*, 82 M.J. 157, 168 (C.A.A.F. 2022).

### Admissibility of Controlled Call Under Mil. R. Evid. 317

Appellant asserts the military judge erred by denying his motion to suppress his statements made during the controlled call with Y.B. We review for an abuse of discretion. *United States v. Metz*, 84 M.J. 421, 427 (C.A.A.F. 2024). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id*. (cleaned up).

Appellant's motion asserted that because there was no evidence that CGIS had received proper authority under applicable regulations to conduct an interception of oral or wire communications, the evidence was barred by Mil. R. Evid. 317, which provides, in pertinent

part, that "evidence obtained by members of the Armed Forces or their agents through interception of wire or oral communications for law enforcement purposes is not admissible unless such interception . . . is authorized under regulations issued by the Secretary of Defense or the Secretary concerned . . . ." Mil. R. Evid. 317(c).

The military judge held that he did not need to consider Coast Guard or Department of Homeland Security regulations because it was FCPD, not CGIS, who obtained the evidence through interception of wire or oral communications. He therefore denied the motion to suppress.

Appellant urges that the military judge interpreted Mil. R. Evid. 317(c) too narrowly, and that under an ordinary meaning of the word "obtain," military investigators "obtain" evidence when they come into possession of it through a wire or oral interception that civilian investigators conducted, but military investigators participated in. We disagree. By its plain language, Mil. R. Evid. 317(c) applies when military investigators obtain evidence *through interception of wire or oral communications* for law enforcement purposes. Mil. R. Evid. 317(c). It does not apply *any* time military investigators obtain evidence that has been intercepted—only when they do so *by means of intercepting communications*. We thus read the rule as only applying when members of the Armed Forces or their agents themselves intercept wire or oral communications.

Here, CGIS did not intercept any communications. FCPD did. As the military judge's findings of fact amply support, this was an FCPD operation using FCPD resources and with FCPD squarely in the lead. The fact that CGIS was permitted to sit in and pass notes to the FCPD detective who ran the operation does not change this.

Accordingly, we agree with the military judge that Mil. R. Evid. 317 did not apply to FCPD's interception of communications and conclude that he did not abuse his discretion by denying the motion to suppress.

**Alleged Instructional Error**

In two of Appellant's assignments of error, he asserts that the military judge erred in the instructions he provided to the members. We conclude that Appellant waived these objections.

When an accused "expressly and unequivocally acquiesce[es]" to the military judge's instructions, he waives all objections to them. *United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020) (quoting *United States v. Smith*, 2 C.M.A. 440, 442, 9 C.M.R. 70, 72 (1953)). After Appellant raised unrelated objections to the military judge's proposed instructions, the military judge repeatedly asked if either party had any other objections or requested any additional instructions. Appellant's counsel expressly indicated he did not. Irrespective of the time that passed while the interlocutory petition was acted upon, this is waiver.

Appellant argues, in the alternative, that his trial defense counsel were ineffective for waiving these objections. To prevail on this claim, Appellant has the burden of showing both deficient performance and prejudice. *Palik*, 84 M.J. at 288. "An appellant is prejudiced by counsel's deficient performance where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)).

Appellant fails to demonstrate prejudice. There is not a reasonable probability that had the now-desired instructions been provided, the result of the proceedings would have been different. Accordingly, we reject Appellant's claim of ineffective assistance of counsel.

**Inquiry into Markings on Findings Worksheet**

Appellant asserts that after receiving a findings worksheet where "not guilty" had been circled, then crossed out and "guilty" circled instead, the military judge erred by failing to inquire into whether the changes were the result of a revote or an administrative error. We agree with the military judge that such an inquiry would have constituted an unauthorized intrusion into the deliberative process. The actions he did take—instructing the members to complete a

fresh findings worksheet to reflect the findings they had come to without any further deliberation or revoting—were authorized and appropriate.

R.C.M. 921(d) permits a military judge to "examine any writing which the president intends to read to announce the findings and may assist the members in putting the findings in proper form. Neither that writing nor any oral or written clarification or discussion concerning it shall constitute announcement of the findings." At the same time, a military judge is generally prohibited from questioning members "about their deliberations and voting." R.C.M. 922(e); Mil. R. Evid. 606(b)(1). Mil. R. Evid. 606(b)(2) provides strictly constrained exceptions to this general rule. *United States v. Loving*, 41 M.J. 213, 237 (C.A.A.F. 1994); *United States v. RosarioMartinez*, 85 M.J. 535, 541 (N-M. Ct. Crim. App. 2024), *review granted,* 85 M.J. 463 (C.A.A.F. 2025). One such exception is that a member may testify about whether "a mistake was made in entering the finding or sentence on the finding or sentence forms." Mil. R. Evid. 606(b)(2)(C).

Despite this exception, we agree with the military judge that asking whether circling and crossing out "not guilty" was the result of revoting or an administrative error would have constituted an unwarranted intrusion into the members' deliberative process. In *United States v. Brooks*, CAAF held that a military judge's voir dire of members to determine they had voted to acquit prior to revoting without following proper procedures for reconsideration constituted prohibited inquiry into their deliberative process. 42 M.J. 484, 485, 487 (C.A.A.F. 1995). Thus, "any evidence obtained by such inquiry was incompetent." *Id*. at 487.

Although Mil. R. Evid. 606(b) was amended in 2013—well after the *Brooks* decision—to add the exception that a member may testify about whether a mistake was made in entering the finding on a finding form,[3] that does not, we conclude, supersede the rationale or holding of *Brooks*. By its plain language, the amended rule certainly appears to allow inquiry into the validity of a finding when a mistake on a finding form indicates that it does not accurately reflect the panel's *final verdict*. Mil. R. Evid. 606(b). But in our view, that does not open the door to

---

[3] 2013 Amendments to the Manual for Courts-Martial, United States, Annex § 1, Exec. Order No. 13,643, 78 Fed. Reg. 29559 (May 15, 2013).

inquiring into the deliberative process to determine if, prior to the final verdict, the members voted and revoted in contravention of instructions.

This conclusion is supported by the Drafter's Analysis addressing the 2013 amendment to Mil. R. Evid. 606: "The amendment to subsection (b) aligns this rule with the Federal Rules of Evidence. This revision is stylistic. The drafters had no intent to change any result in any ruling on evidence admissibility." *Manual for Courts-Martial, United States* (2016 ed.), app. 22, Analysis of the Military Rules of Evidence at A22-54. In other words, the drafters expressly disavowed any intent to change prior rulings such as *Brooks*.

The Advisory Committee Notes to the Federal Rules of Evidence upon which Mil. R. Evid. 606(b) was modeled, likewise supports our conclusion:

> Rule 606(b) has been amended to provide that juror testimony may be used to prove that the verdict reported was the result of a mistake in entering the verdict on the verdict form. The amendment responds to a divergence between the text of the Rule and the case law that has established an exception for proof of clerical errors. *See, e.g., Plummer v. Springfield Term. Ry.,* 5 F.3d 1, 3 (1st Cir. 1993) ("A number of circuits hold, and we agree, that juror testimony regarding an alleged clerical error, such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or the deliberation of mental processes, and therefore is not subject to Rule 606(b)."); *Teevee Toons, Inc., v. MP3.Com, Inc.,* 148 F. Supp. 2d 276, 278 (S.D.N.Y. 2001) (noting that Rule 606(b) has been silent regarding inquiries designed to confirm the accuracy of a verdict). . . . [A] broader exception is rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon.

Fed. R. Evid. 606, Advisory Committee Notes, 2006 Amendments.

We conclude that the exception in Mil. R. Evid. 606(b)(2)(C) is not so broad as to permit inquiry into whether members revoted without following proper procedures for reconsideration. This remains an impermissible intrusion into their deliberations. R.C.M. 922(e); *Brooks*, 42 M.J. at 487. Accordingly, we conclude that the military judge did not err by declining to conduct such

inquiries prior to ensuring that the findings worksheet was in proper form and accurately reflected the members' verdict.

**Advice of Forum Election and Excusal of Members**

Appellant asserts that when two previously enlisted members were promoted to chief warrant officer during the stay of proceedings, the military judge misadvised Appellant on his forum rights and abused his discretion by excusing the two members. We disagree.

*Additional Background*

Prior to assembly of the court-martial, Appellant, having been apprised of his forum rights, elected to be tried by members with enlisted representation. A court-martial with at least one-third enlisted members was duly impaneled, and presentation of evidence on the merits commenced. However, in the middle of the Government's case-in-chief, the court-martial was stayed for over ten months while this Court and our higher court acted on the interlocutory petition for extraordinary relief. In the meantime, two members who had been impaneled as enlisted members were promoted to chief warrant officer. As a result, the panel no longer had at least one-third enlisted members.

When asked their position, trial defense counsel indicated that Appellant desired to maintain the current members, but also desired to preserve his election to be tried by enlisted members. The military judge concluded that once an accused elects enlisted representation, having at least one-third enlisted members hear the case was a jurisdictional requirement and that Appellant's choices were either: (1) he could withdraw his request for enlisted representation, in which case the members as constituted could proceed; or (2) he could maintain his request for enlisted representation, in which case the military judge intended to excuse the two newly promoted members. Appellant declined to withdraw his election for enlisted members, but he disagreed with the military judge's plan to strike the two newly promoted members and moved for a mistrial. The military judge denied the motion for a mistrial, excused the two members for cause, and impaneled two enlisted alternates.

*Law*

Except in the case of a special court-martial comprised of a military judge alone under Article 16(c)(2)(A), UCMJ, an enlisted accused in a non-capital court-martial may elect to be tried by one of three forums: (1) military judge alone; (2) officer members; or (3) members with at least one-third enlisted representation. Articles 16, 25, UCMJ; R.C.M. 903(a). The military judge must ascertain an accused's forum election "before the end of the initial Article 39(a) session or, in the absence of such a session, before assembly. . . ." R.C.M. 903(a)(1). An enlisted accused's election for a specific panel composition—that is, either officer members or members with enlisted representation—is timely if made within those time constraints. R.C.M. 903(a)(1), (c)(1). An accused may withdraw an election for a specific panel composition, but it must be within the same time constraints: before the end of the initial Article 39(a) session or, in the absence of such a session, before assembly. R.C.M. 903(d)(1).

> These time constraints have consequences:
>
> Failure to request, or failure to withdraw a request for a specific panel composition or trial by military judge alone *shall waive* the right to submit or withdraw such a request. However, the military judge may, *until the beginning of the introduction of evidence on the merits*, as a matter of discretion, approve an untimely request or withdrawal of a request.

R.C.M. 903(e) (emphasis added).

Once a court-martial with members is assembled, no member may be absent unless the member is excused: (1) as a result of a challenge; (2) due to not being impaneled; or (3) "by order of the military judge or convening authority for disability or other good cause." Article 29(a), UCMJ. Regarding excusal as result of a challenge, R.C.M. 912(f)(1)(N) provides, "A member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

"Notwithstanding the absence of a challenge or waiver of a challenge by the parties, the military judge may, in the interest of justice, excuse a member against whom a challenge for cause would lie." R.C.M. 912(f)(4). We review a military judge's sua sponte decision to excuse a

member for an abuse of discretion. *United States v. Hasan*, 84 M.J. 181, 208 (C.A.A.F. 2024); *see also United States v. James*, 61 M.J. 132, 138 (C.A.A.F. 2005) (reviewing grant of challenge for cause for abuse of discretion).

An erroneous granting of a challenge for cause is subject to harmless error analysis. *United States v. Dockery*, 76 M.J. 91, 99 (C.A.A.F. 2017). The appellant has the burden of showing the erroneous excusal materially prejudiced his right to a fair and impartial panel. *Id.*; *see also* Article 59(a), UCMJ.

*Application*

With these standards in mind, we conclude: (1) Appellant's forum election rights were fully vindicated; (2) the military judge did not abuse his discretion by excusing two members to preserve the legality of the court-martial; and (3) even if error, it did not materially prejudice a substantial right of Appellant.

There is no dispute that Appellant was apprised of and understood his right to elect trial by members, members with enlisted representation, or military judge alone—or that, understanding these three choices, he elected to be tried by members with enlisted representation. Rather, Appellant takes issue with which members the military judge indicated he would excuse if Appellant maintained his election for trial by members with enlisted representation after two enlisted members were promoted to chief warrant officer. For three reasons, we conclude that this did not undermine Appellant's forum election rights.

First, Appellant's forum election rights were vindicated when, prior to assembly of the court-martial, he made a knowing and timely election. Upon assembly of the court-martial, he no longer had the right to withdraw his election. R.C.M. 903(d)(1). And once the presentation of evidence on the merits began, the military judge no longer had discretion to approve an untimely request to withdraw his election. R.C.M. 903(e). The military judge's offer for Appellant to withdraw his election was thus error, but harmless since Appellant maintained his election.

Second, even if Appellant could have changed his election, his choice would have been between officer members—which would have required excusing and replacing enlisted members—and members with enlisted representation—which would have required excusing some officers and replacing them with enlisted members to ensure at least one-third enlisted representation. Article 25(c)(2), UCMJ; R.C.M. 903(a)(1). Appellant was not entitled to know which members would be excused in order to make this choice knowingly and intelligently. The statutory and regulatory scheme envisions the opposite: assembly—the point at which an accused no longer has the right to withdraw a request for a specific panel composition—takes place prior to challenge of members, impanelment, and, finally, presentation of evidence—the point at which even the military judge loses the discretion to allow the accused to change his election. Article 25(c)(2), UCMJ; R.C.M. 903(e), 911, 912. Excusing and replacing members post-assembly is addressed in Article 29, UCMJ, illustrating that a military accused's "chosen panel will not necessarily remain intact throughout a trial. . . . [A]n accused does not have the same right to have a trial completed by a particular court panel as a defendant in a civilian jury trial does." *United States v. Easton*, 71 M.J. 168, 175–76 (C.A.A.F. 2012).

Either way, as long as Appellant's election was members with enlisted representation, a change to the composition of the panel was required. Once the status of two members changed from enlisted to commissioned officer, the panel at that point no longer had at least one-third enlisted members. This was inconsistent with Appellant's election for trial by members with enlisted representation, and until this was resolved, a trial of Appellant *could not proceed*. Article 25(c), UCMJ stipulates that except in circumstances not present here, once an accused makes a specific panel composition request, "the accused *may not be tried* by a general or special court-martial if the membership of the court-martial is inconsistent with the request." (Emphasis added). We agree with the military judge that this statutory requirement is jurisdictional and thus non-waivable. *See United States v. Adams*, 66 M.J. 255, 258 (C.A.A.F. 2008) ("Jurisdictional error occurs when a court-martial is not constituted in accordance with the UCMJ.").

Third, although Appellant offers alternative mechanisms he would have preferred to bring the panel composition back to quorum, we cannot say the military judge's chosen course of action was an abuse of discretion. The panel was no longer legally constituted because these two

particular members who had been detailed to the court-martial as enlisted members became commissioned officers. This did not disqualify them per se, but the military judge had the discretion to excuse them if he determined they should not sit as members in the interest of having the court-martial free from substantial doubt as to its legality. R.C.M. 912(f)(1)(N). This was a reasoned decision that was within his range of choices. *See United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) ("[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.").

Finally, Appellant fails to demonstrate he was prejudiced by the excusal of the two members. He does not allege—nor do we find any indication—that the replacement members were biased or "that their presence on the panel created substantial doubt as to the court-martial's 'legality, fairness and impartiality.' " *Dockery*, 76 M.J. at 99 (quoting R.C.M. 912(f)(1)(N)).

Accordingly, we conclude that the military judge did not commit prejudicial error in advising Appellant about his forum election rights or in excusing the two members whose status had changed from enlisted to commissioned officer.

### Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge MCCLELLAND and Judge TASIKAS concur.



For the Court,

Rebecca P. Pskowski
Acting Clerk of the Court

22